Ryan L. Werner (State Bar No. 112181)
rwerner@penningtonlawson.com
Pennington Lawson LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA  94111
Telephone (415) 484-4343

Attorneys for Plaintiff and Counterdefendant
Lennar Mare Island, LLC

W. David Campagne (State Bar No. 111372)
dcampagne@spcclaw.com
Blaise S. Curet (State Bar No. 124983)
bcuret@spcclaw.com
Stephen R. Wong (State Bar No. 186187)
swong@spcclaw.com
SINNOTT PUEBLA CAMPAGNE & CURET, APLC
555 Montgomery Street, Suite 720
San Francisco, CA 94111
Telephone:  (415) 352-6212

Attorneys for Defendant, Counterclaimant and
Counterdefendant Steadfast Insurance Company

Deborah S. Ballati (State Bar No. 067424)
dballati@fbm.com
Amanda D. Hairston (State Bar No. 251096)
Ahairsont@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Attorneys for Counterdefendant and Counterclaimant
CH2M Hill Constructors, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| LENNAR MARE ISLAND, LLC,<br><br>              Plaintiff,<br>       vs.<br><br>STEADFAST INSURANCE COMPANY,<br><br>              Defendant. | CASE No. 2:12-cv-02182-KJM-KJN<br><br>JOINT STATUS REPORT AND DISCOVERY PLAN<br><br>Status Conference Date:  January 10, 2013<br>Time:  2:30 p.m. |

JOINT STATUS REPORT AND DISCOVERY PLAN                                                                                          1
22473\3489858.6

|   |   |
|---|---|
| 1 | STEADFAST INSURANCE COMPANY, |
| 2 | Counterclaimant, |
| 3 | vs. |
| 4 | LENNAR MARE ISLAND, LLC, and CH2M HILL CONSTRUCTORS, INC., |
| 5 |   |
| 6 | Counterdefendants. |
| 7 | CH2M HILL CONSTRUCTORS, INC., |
| 8 | Counterclaimant, |
| 9 | vs. |
| 10 | STEADFAST INSURANCE COMPANY, |
| 11 | Counterdefendant. |

Pursuant to Federal Rules of Civil Procedure, Rule 26(f) and this court's Order Setting Status entered August 21, 2012, the parties jointly submit the following status report and discovery plan. In this report, Plaintiff and Counterdefendant Lennar Mare Island, LLC is referred to as "LMI;" Defendant, Counterclaimant and Counterdefendant Steadfast Insurance Company is referred to as "Steadfast;" and Counterdefendant and Counterclaimant CH2M Hill Constructors, Inc. is referred to as "CCI."

A. Summary of Claims and Legal Theories

1. LMI's Claims and Legal Theories

LMI's Complaint alleges that pursuant to an Environmental Liability Insurance ("ELI") policy Steadfast issued, Steadfast is obligated to pay for cleanup of previously unknown environmental contamination at certain sites on real property LMI owns on Mare Island in the City of Vallejo, California ("Mare Island"). LMI seeks declaratory relief that its claims are covered under the ELI policy, contract damages, and tort damages for insurance "bad faith."

LMI also contends that Steadfast knowingly interfered with its contractual relationship with CCI under the contract LMI had entered into with CCI to perform environmental cleanup operations at Mare Island. LMI further alleges that Steadfast deliberately refused to pay CCI amounts due

under a separate Remediation Stop Loss ("RSL") insurance policy issued by Steadfast that covered cleanup of specified <u>known</u> environmental contamination at Mare Island.

### 2. Steadfast's Claims and Legal Theories

The United States Department of the Navy (the "Navy") operated a facility at Mare Island from 1852 to 1996. These operations resulted in contamination of certain sites on Mare Island, which the Navy was obligated to investigate and remediate.

In April 2001, the Navy and the City of Vallejo (the "City") entered into an Environmental Services Cooperative Agreement ("ESCA"), under which the City agreed to perform environmental remediation of a portion of Mare Island known as the Eastern Early Transfer Parcel ("EETP"). The Navy agreed to pay $77.67 million to the City to be used for the remediation. Under the ESCA, the City declined responsibility for certain of the Navy's potential environmental liabilities, including, *inter alia*, natural resource damages, certain unknown conditions, and known conditions once remediation costs for known conditions exceeded $114.3 million (collectively, "Navy Retained Conditions"). In conjunction with the ESCA, the Navy transferred title of the EETP to the City. The City then conveyed the EETP to LMI, which agreed to perform the remediation required by the ESCA pursuant to the Mare Island Remediation Agreement ("MIRA") between the City and LMI. Finally, LMI and CCI entered into a Guaranteed Fixed Price Contract ("GFPC") which required CCI to provide certain environmental services related to the remediation of specified known pollution conditions at the EETP.

In December 2001, Steadfast issued the two policies involved in this action: (1) the RSL policy issued to CCI, and (2) the ELI policy issued to CCI and LMI. The RSL policy generally afforded coverage for CCI's reasonable costs in excess of $57,500,176 for the performance of work required by the GFPC; the RSL policy excluded coverage for Navy Retained Conditions. The ELI policy generally afforded coverage for cleanup costs for unknown pollution conditions first discovered by an insured during the policy period; the ELI policy also excluded coverage for Navy Retained Conditions.

In April 2012, LMI, CCI, the City and the Navy finalized an Amended ESCA after nearly three years of negotiations. The Amended ESCA stipulated that the $114.3 million ESCA cap had

been reached, but was silent concerning the date by which that figure was reached.  Since Navy Retained Conditions are not insured by Steadfast, Steadfast contends the Amended ESCA has significant ramifications for the coverage available under the ELI policy, and for benefits already paid by Steadfast under the RSL policy.

LMI's initial cause of action against Steadfast for interference with contract is based on the allegation that Steadfast wrongfully refused to pay CCI for certain cleanup costs at a Mare Island site known as Building 206/208 under the RSL policy; Steadfast denies that allegation on the basis that the disputed costs were not reasonable or necessary.  Steadfast further denies that the cleanup costs sought by LMI for the four sites advanced in the balance of the current Complaint (Buildings 206/208, Building 84, Building 386, and Building 971) are covered by the ELI policy.

The claim under the ELI policy involving Buildings 206/208 arises from lead contamination. The original remedial work at that site involved known conditions which were being remediated as part of the work at Industrial Wastewater Pump Station #6 ("IWPS#6").  Steadfast accepted coverage for the remediation at Building 206/208 under the RSL policy.  However, LMI contends the lead at Building 206/208 did not originate from IWPS#6, and was therefore an unknown condition subject to coverage under the ELI policy.  Steadfast disagrees on the grounds that lead contamination in the area of Buildings 206/208 was a known condition, regardless of any misapprehensions concerning the exact source(s) of that contamination.  In addition, Steadfast disputes the reasonableness and necessity of certain work performed at Buildings 206/208.

Building 84 involves indoor air contamination from PCBs at a former Navy prison. Remediation of both known and unknown polychlorinated biphenyl ("PCB") sites has been completed in Building 84, but the indoor air continues to contain PCB contamination.  The source of the air contamination has yet to be determined, and whether it is a known or unknown pollution condition is disputed.

Building 386 involves four underground fuel oil pipeline segments ("FOPLs").  Steadfast contends claims related to Building 386 were released under an April 29, 2010 settlement agreement between LMI, Steadfast, and CCI (the "FOPL Settlement").  In addition, Steadfast contends there has been no evidence of any pollution event associated with the FOPLs, which is required for

1  coverage to exist under the ELI policy.

2      Building 971 involves multiple chemical constituents in black granular material ("BGM") in
3  the subsurface of the site.  A sample of the BGM was found to consist of elevated levels of copper
4  and lead, and lower-level detections of other metals and soluble volatile organic compounds
5  (VOCs).  CCI opined that some of the constituents were associated with known conditions, but
6  others (e.g., mercury and VOCs) were not associated with known conditions. Steadfast contends that
7  there is presently insufficient evidence to show that the BGM constitutes an unknown pollution
8  condition eligible for coverage under the ELI Policy.  Steadfast further contends LMI waived its
9  right to seek such coverage since it previously withdrew this claim under the ELI policy and sought
10 coverage under the RSL policy.

11     Steadfast also disputes coverage under the ELI policy for the three additional sites which
12 LMI seeks to add to its Complaint (Building 688 Pits, Building 116, and Domestic Waste Pump
13 Station 6).  CCI previously investigated and remediated the Building 688 Pits under the GFCA and
14 charged such costs to the RSL policy.  Subsequently, CCI and LMI contended that contamination at
15 the Building 688 Pits was an unknown pollution condition.

16     Building 116 involves a dispute over whether claimed site costs related to PCB remediation
17 were released for consideration by a January 2008 settlement agreement between Steadfast, LMI,
18 and CCI.  Steadfast is currently unaware of the basis for or nature of any dispute involving Domestic
19 Waste Pump Station 6.

20     Steadfast's Counterclaim seeks a declaration that certain costs requested by CCI for Building
21 206/208 are not covered by the RSL policy.

22     As to CCI's Counterclaim, Steadfast disputes CCI's contentions that Steadfast improperly
23 delayed or denied coverage under the RSL policy for claims related to:  (1) Investigation Area B &
24 Crane Test Area; (2) Investigation Area C1; (3) Installation Restoration Site 15; (4) Installation
25 Restoration Site 19; (5) Underground Storage Tank Sites; (6) Remedial Utility Sites; (7) Industrial
26 Wastewater Pump Station No. 6; (8) Limited Further Investigation Amounts; (9) Project
27 Management; and (10) Construction Management.  Steadfast has requested additional information
28 from CCI regarding the exact nature of CCI's claims involving these areas; until such information is

1  provided, Steadfast is unable to provide a more detailed explanation of its position regarding
2  coverage for these areas/activities.
3      Critical to resolution of this case is determining when the $114.3 million ESCA cap was paid
4  out for known pollution conditions because the RSL policy excludes coverage for remediation costs
5  after $114.3 million has been paid for remediation of known pollution conditions.  The Navy
6  apparently contends that the $114.3 million was reached in the Third Quarter of 2011.  Steadfast has
7  reason to believe the amount was reached even earlier, and, as a consequence, that costs reimbursed
8  by Steadfast to CCI for what were then presumed to be known conditions reimbursable under the
9  RSL policy, were in fact Navy Retained Conditions due to exhaustion of the ESCA cap.  To the
10 extent the Amended ESCA resulted in CCI releasing claims against the Navy for costs that were
11 actually incurred in connection with Navy Retained Conditions, Steadfast contends that CCI
12 prejudiced Steadfast's subrogation rights.
13
14     3.   <u>CCI's Claims and Legal Theories</u>
15     CCI's Counterclaim alleges that Steadfast has breached its obligations to CCI under the RSL
16 policy by failing to pay "Loss" related to certain site locations and activities at Mare Island.  CCI
17 contends that Steadfast has breached the policy conditions and the implied covenant of good faith
18 and fair dealing by, among other things, repeatedly asking for additional unnecessary information;
19 groundlessly disputing the details of technical and scientific information provided to it; groundless
20 disputing the details of amounts claimed by CCI as covered expenses; and groundlessly delaying or
21 refusing payment of amounts that are undisputedly due and for which Steadfast has acknowledged
22 coverage.  The amount currently owed to CCI by Steadfast exceeds $11 million.  CCI is currently
23 preparing responses to Steadfast's requests for further information regarding the sites listed in CCI's
24 Counterclaim.
25
26     B.  <u>Status of Service</u>
27     All parties have been served and have appeared.
28

### C. Possible Joinder of Additional Parties

Neither LMI nor CCI currently anticipates joining additional parties. Steadfast believes the Navy is an essential party to this action, but the Navy was not initially joined based on its sovereign immunity. Steadfast reserves the right to join the Navy if it can determine a legally tenable basis for doing so.

### D. Contemplated Amendments to the Pleadings

LMI and Steadfast have agreed to certain amendments to LMI's Complaint to add three additional sites as to which they have a dispute regarding coverage under the ELI policy (Building 688 Pits, Building 116, and Domestic Waste Pump Station 6). Steadfast reserves the right to seek leave to amend its pleadings once it has had the opportunity to discover the bases for the reallocation of rights among the parties to the Amended ESCA and/or once it has obtained clarification of the claims advanced in CCI's Counterclaim. CCI similarly reserves the right to seek leave to amend its Counterclaim should additional facts or allegations justify such amendment.

### E. Statutory Bases for Jurisdiction and Venue

The parties agree that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b), and that venue is proper pursuant to 28 U.S.C. § 1441(a) because this action was removed from the California Superior Court for Solano County, within the Eastern District of California.

### F. Anticipated Discovery and Discovery Scheduling

#### 1. Changes to Rule 26(a) Requirements

LMI contends that the volume of documentation relevant to the claims between it and Steadfast is neither so large nor so burdensome as to require any special procedure, or waiver or extension of ordinary deadlines. As of the date of the Status Conference, LMI expects to have completed its initial disclosure, including approximately 2,800 documents consisting of:

- Reports regarding unknown contamination provided by its cleanup contractor, CCI;

1        •    LMI's tenders to Steadfast of claims regarding unknown contamination;

2        •    Steadfast's requests for additional information regarding those claims;

3        •    LMI's responses to Steadfast's requests for additional information; and

4        •    All other communications (including both written and electronic communication)

5            between Steadfast and LMI regarding the sites at issue.

6 Not included in the documents to be produced by LMI as of the date of the Status Conference are

7 certain documents as to which LMI believes a protective order is appropriate, or which it

8 understands Steadfast contends are confidential.

9      Due to what they believe is the significant volume of documentation involved in this dispute,

10 Steadfast and CCI request until ninety (90) days after the Status Conference in which to make their

11 initial disclosures pursuant to Rule 26(a).

12            2.    Discovery Subjects, Timing, and Phasing

13      **LMI's Proposal**. LMI submits that the case should proceed in two phases, as described

14 below.

15      Phase 1:

16      (a) Resolution of Coverage Issues Between LMI and Steadfast. With respect to LMI's

17 claims against Steadfast and Steadfast's claims against LMI regarding the ELI policy, the threshold

18 issue is whether insurance coverage exists for each of the sites in question. As to each site, LMI

19 contends coverage can be determined by the court as a matter of law once the parties have either

20 stipulated to the relevant facts, or have completed straightforward discovery regarding the

21 determinative facts.

22      Those facts boil down to whether environmental contamination (a "Pollution Event," as

23 defined in the ELI Policy) exists at each site. As to each, site there is no real dispute that pollution

24 exists; the only real dispute is whether that pollution comes within the ELI policy's coverage grant

25 or falls within an exclusion to coverage. In each instance a coverage determination involves

26 application of the policy language to known facts.

27      LMI believes it is possible that a stipulation to the relevant facts could be reached within

28 ninety (90) days. Absent a stipulation, the necessary discovery can be completed within six (6)

1 months.  Motions for summary adjudication on coverage under the ELI policy could be presented to
2 the court either by June 3, 2013 (pursuant to stipulated facts) or September 2, 2013 (following Phase
3 1 discovery).  To the extent summary adjudication is not granted, a Phase 1 trial limited to the issue
4 of coverage under the ELI policy could be held approximately ninety (90) days after the summary
5 adjudication ruling.

6 (b) Resolution of Coverage Issues Between CCI and Steadfast.  LMI believes Phase 1 could
7 also include discovery and summary adjudication motions by Steadfast and CCI on the claims
8 between them regarding one or more sites, but defers to CCI and Steadfast on this aspect of the case.

9 Phase 2:  (a) As to those disputed sites for which the court finds coverage under the ELI
10 policy in Phase 1, LMI believes a further status conference would then be appropriate to set a
11 schedule for fact discovery, expert discovery, and trial regarding Steadfast's tort liability on LMI's
12 interference with contract and insurance bad faith theories, and on LMI's contract and tort damages.
13 (b)  Phase 2 should also include discovery on, and trial of, CCI's insurance bad faith claims against
14 Steadfast.

15 A summary of LMI's phasing proposal is attached as Exhibit 1.

16

17 **Steadfast's Proposal**.  Steadfast believes discovery in this matter will address site histories
18 and regulatory requirements, site investigations and characterizations, consultant findings and
19 conclusions, claims communications between the parties, and prior settlements between and/or
20 among the parties.  Expert technical analysis is expected to be significant in all phases across a broad
21 range of issues.

22 Steadfast believes this action should be phased due to the significant factual differences
23 relating to the various sites; those factual differences will require substantial discovery of percipient
24 witnesses and expert analysis.  Steadfast proposes that the sites at issue be adjudicated in groups, as
25 follows:

26 Phase 1:  LMI's claims for coverage under the ELI policy for Building 386 and Building 116;
27 Phase 2:  LMI's claims for coverage under the ELI policy for Building 971 and Building 688;
28 Phase 3:  LMI's claims for coverage under the ELI policy for Building 206/208, Building 84,

JOINT STATUS REPORT AND DISCOVERY PLAN                                                                                                9
22473\3489858.6

1 and Domestic Waste Pump Station 6;

2 <u>Phase 4</u>;  Steadfast and CCI's disputes regarding coverage under the RSL policy; and

3 <u>Phase 5</u>:  LMI's claim for interference with contract claim (which is based on the alleged
4 denial of coverage afforded to CCI for Building 206/208 under RSL policy); and, if necessary,
5 LMI's and CCI's damages and bad faith claims.

6 Steadfast agrees that a stipulation concerning some material facts could be reached within
7 ninety (90) days.  However, Steadfast believes it unlikely that the parties will stipulate to all the facts
8 material to the issues in dispute.  Accordingly, Steadfast believes discovery likely will be necessary
9 for each phase.

10 **CCI's Proposal**.  CCI believes that phasing of the case is the best and most efficient way to
11 handle the disputes.  Given the differing views between LMI and Steadfast on whether, and to what
12 extent, issues can be resolved on pretrial motions, CCI has suggested that LMI and Steadfast
13 attempt, over the next sixty (60) days, to reach a stipulation regarding agreed facts with respect to
14 one of the main sites whose coverage is in dispute between them sufficient to frame a dispositive
15 coverage motion on that site.  CCI reserves the right to review and comment upon the proposed
16 agreed statement to the extent CCI has any interest in resolution of disputes involving that site.

17 If an agreed set of facts sufficient to support a dispositive motion on the first site can be
18 achieved, the parties should then meet and confer on whether agreed sets of facts on other sites can
19 likely be achieved; if they can, the parties should attempt to achieve them over an additional sixty
20 (60) day period.  At the end of that period, the parties should meet and confer on an appropriate
21 schedule for a dispositive motion or motions.

22 If LMI and Steadfast cannot achieve an agreed set of facts at the end of the first sixty (60)
23 day period, and also cannot agree on another site about which an agreed set of facts can likely be
24 achieved, CCI suggests the parties meet and confer to come up with a phased discovery plan similar
25 to that proposed by Steadfast.

26

27        3. <u>Changes to FRCP Discovery Limits</u>

28 **LMI's Proposal**.  For purposes of its proposed Phase 1, LMI contends no changes to

JOINT STATUS REPORT AND DISCOVERY PLAN      10
22473\3489858.6

discovery limits are necessary or appropriate at this time.  Any exceptions that may appear appropriate in the course of discovery can be addressed on a case by case basis among counsel.

**Steadfast's Proposal**.  This is a complex coverage dispute that involves numerous sites, each involving extensive site history to determine whether certain losses were "first discovered" within the ELI policy period, extensive site characterization to define the claimed liability at each site and to determine whether it is a known condition, extensive agency involvement at each site to establish the regulatory compulsion under which expenditures were undertaken, and claims communications spanning multiple years at each of these sites to determine the level of cooperation demonstrated by each of the insureds.  The policies, and specifically the underwriting history associated with each policy, will need to be examined so that the mutual intentions of the parties can be determined with regard to, among other provisions, the 922 word definition of Known Pollution Conditions, and the more than 196 contamination location/source entries in the tables associated with that definition.

Also subject to discovery will be the drafting history and intended scope of past settlement agreements between the parties.  And of critical importance to Steadfast's claims against CCI are the three (3) years of negotiations that produced the Amended ESCA.  As a result, Steadfast requests that the discovery limitations imposed by Rule 30(a)(2) (limiting depositions to ten (10)) and Rule 33(a)(1) (limiting interrogatories to twenty five (25)) be waived.  In addition, Steadfast requests that the limitations imposed by Federal Rule of Civil Procedure 30(d)(1) ["1 day of 7 hours"] be lifted, at least as respects Rule 30(b)(6) depositions, which are expected to entail extensive topics for examination in light of the multiplicity of sites and coverage issues.

**CCI's Proposal**.  CCI favors phased and limited discovery as the most appropriate and efficient way to resolve the disputes between the parties.  Given the lack of clarity at this time on how complex the discovery will need to be, especially between LMI and Steadfast, CCI suggests the parties reserve the right to seek relief from the limitations in Federal Rules of Civil Procedure 30 and 33.  CCI believes at this time that some relief from those limitations will likely be appropriate unless the parties can agree upon substantial facts in order to resolve key issues by dispositive motions.

          4.    Timing of Expert Disclosure

LMI and CCI believe that setting a date for expert disclosure is premature. Steadfast believes experts for its proposed Phase 1 could be disclosed by September 1, 2013.

          5.    Proposed Discovery Cut-off

**LMI's Proposal**. LMI proposes that if no stipulation can be reached with Steadfast as to facts relevant to coverage, a Phase 1 discovery cutoff be set for July 1, 2013. A Phase 2 discovery cutoff should be set at a status conference following completion of Phase 1.

**Steadfast's Proposal**. As set forth above, Steadfast does not believe the parties will be able to stipulate to all material facts. Steadfast proposes that the discovery cut-off for the sites and issues relevant to its proposed Phase 1 be set for November 1, 2013. Discovery cut-off dates for the sites and issues relevant to each subsequent phase should be set after the completion of the preceding phase.

**CCI's Proposal**. Again, given the radically different views of what case management approaches are appropriate to resolve the LMI/Steadfast disputes which form the core of this matter, CCI suggests deferring selection of a discovery cutoff date until decisions are made on the phasing and motion approaches outlined above.

        G.  Dispositive or Other Motions and Proposed Hearing Dates

**LMI's Proposal**. LMI proposes that if it and Steadfast are able to stipulate to material undisputed facts pertaining to each of the disputed sites, summary adjudication motions on coverage under the ELI policy be filed on June 3, 2013, and heard on July 1, 2013. If they are not able to stipulate to the relevant facts, summary adjudication motions should be filed on September 2, 2013 and heard on September 30, 2013. A deadline approximately ninety (90) days after the Status Conference should be set for LMI and Steadfast to meet and confer regarding a possible stipulation; even if a stipulation cannot be reached, the process may help narrow the discovery needed.

**Steadfast's Proposal**.  Steadfast proposes that motions for summary judgment and/or summary adjudication for its proposed Phase 1 be filed by December 1, 2013, with opposition briefs due on January 2, 2014, and replies due on January 10, 2013.  Subsequent motions for summary judgment and/or summary adjudication for subsequent phases should be set after the completion of Phase 1.

**CCI's Proposal**.  CCI hopes some disputes between it and Steadfast can be resolved through the ongoing settlement discussions which are underway between their respective in-house counsel, or through dispositive motions, if necessary, once CCI and Steadfast can agree upon the date when the $114.3 million ESCA cap was reached CCI will propose a date for such dispositive motions once the ongoing negotiations are concluded.

H. <u>Methods For Avoiding Unnecessary Proof and Evidence; Anticipated Limitations or Restrictions On Evidence or Testimony Under FRE 702</u>

The parties anticipate they will stipulate to the content of the ELI and RSL insurance policies at issue in this case.  No party currently anticipates any limitation or restriction on evidence or testimony.

I. <u>Proposed Date for Final Pretrial Conference</u>

The parties agree it is premature to set a final pretrial conference.

J. <u>Proposed Trial Date, Estimated Length of Trial, Jury Demands</u>

All parties have requested a jury.  All parties agree it is premature to set a trial date, and that providing estimates of the length of trial is also premature, as the length of trial will be substantially impacted by the scope and results of the anticipated motions mentioned above.

K. <u>Appropriate Special Procedures</u>

The parties do not presently contemplate any special procedures.

L. <u>Proposed Modification of Standard Pretrial Procedures Due to Simplicity or Complexity of Case</u>

**LMI's Proposal**. In addition to phasing of the threshold insurance coverage issues for discovery, summary adjudication and trial as set forth above, LMI requests that the Court's Status Order provide for production of certain documents on a Confidential – Attorney's Eyes Only basis and filing of those (if necessary) under seal. In particular, LMI anticipates producing two categories of documents that should remain confidential in certain respects: (1) documents regarding settlement negotiations with Steadfast that Steadfast contends are confidential and subject to protective agreements; and (2) bids for environmental cleanup work submitted to it by contractors who are competitors of CCI and who submitted those bids in confidence that they would not be disclosed to others. In making this request LMI seeks to protect the legitimate expectations of Steadfast and these third party contractors.

**Steadfast's Proposal**.

Steadfast does not object to LMI's proposal that the Court allow for production of certain documents on a Confidential – Attorney's Eyes Only basis. However, the details regarding the exact documents being so designated, the handling of such documents, and methods for contesting such a designation must still be addressed by the parties.

**CCI's Proposal**. CCI agrees with Steadfast's position on this issue.

M. <u>Related Cases</u>

No party is currently aware of any related case.

N. <u>Timing and Method for Settlement Discussion</u>

The parties have engaged in and will continue to engage in informal settlement discussions, and are jointly discussing options under the court's Voluntary Dispute Resolution Program. All

parties are willing to engage in mediation prior to the filing of summary judgment/adjudication motions. If mediation is unsuccessful, LMI proposes that court-ordered settlement conferences be set shortly following hearing on summary adjudication motions as to coverage under the ELI policy. The parties are not willing to stipulate that in the event of a jury trial the trial judge may serve as settlement judge.

O. <u>Other</u>

None.

Date: January 3, 2013                             PENNINGTON LAWSON LLP


By: <u>/s/ Ryan L. Werner (as authorized on 1/3/2013)</u>
       Ryan L. Werner

Attorneys for Plaintiff Lennar Mare Island, LLC

Date: January 3, 2013                             SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC


By: <u>/s/ W. David Campagne (as authorized on 1/3/2013)</u>
       W. David Campagne

Attorneys for Defendant, Counterclaimant and Counterdefendant Steadfast Insurance Company

Date: January 3, 2013                             FARELLA BRAUN + MARTEL LLP


By:     <u>/s/ Deborah S. Ballati</u>
       Deborah S. Ballati

Attorneys for Counterdefendant and Counterclaimant CH2M Hill Constructors, Inc.

# ADDENDUM 1

## SUMMARY OF LMI'S PHASING PROPOSAL

| | |
|---|---|
| Status Conference | January 10, 2013 |
| Deadline for LMI and Steadfast to meet and confer regarding possible stipulation to facts regarding ELI policy coverage issues | March 29, 2013 |
| Schedule for Summary Adjudication of ELI Coverage Issues *on Stipulated Facts (if possible)* | |
|     File motions | June 3, 2013 |
|     File oppositions | June 17, 2013 |
|     File replies | June 24, 2013 |
|     Hearing | July 1, 2013 |
| Phase 1 discovery cutoff (if necessary) | July 1, 2013 |
| Schedule for Summary Adjudication of ELI Coverage Issues *after Phase 1 discovery (if necessary)* | |
|     File motions | September 2, 2013 |
|     File oppositions | September 16, 2013 |
|     File replies | September 23, 2013 |
|     Hearing | September 30, 2013 |
| Settlement Conference (if necessary) | October 7, 2013 |
| Phase 1 Trial (if necessary) | January 6, 2014 |
| Phase 2 Status Conference (schedule Phase 2 discovery, dispositive motions, and expert discovery; set final pretrial conference and trial dates | To follow Phase 1 trial |

ADDENDUM 2

SUMMARY OF STEADFAST'S PHASING PROPOSAL

| | |
|---|---|
| Status Conference | January 10, 2013 |
| Deadline for LMI and Steadfast to meet and confer regarding stipulation to facts regarding all coverage issues | March 29, 2013 |

Phase 1 (addressing LMI's claims for coverage under the ELI policy for Building 386 and Building 116)

| | |
|---|---|
| Expert Disclosure | September 1, 2013 |
| Phase 1 discovery cutoff | November 1, 2013 |
| Schedule for Summary Adjudication of Phase 1 Issues | |
|     File motions | December 1, 2013 |
|     File oppositions | January 2, 2013 |
|     File replies | January 10, 2013 |
|     Hearing | July 1, 2013 |
| Jury Trial | TBD |

Phase 2 (addressing LMI's claims for coverage under the ELI policy for Building 971 and Building 688 Pits)

| | |
|---|---|
| Expert Disclosure | TBD |
| Phase 2 discovery cutoff | TBD |
| Schedule for Summary Adjudication of Phase 2 Issues | |
|     File motions | TBD |
|     File oppositions | TBD |
|     File replies | TBD |
|     Hearing | TBD |

| | | |
|---|---|---|
| 1 | Jury Trial | TBD |
| 2 | | |
| 3 | Phase 3 (addressing LMI's claims for coverage under the ELI policy for Building 206/208, Building | |
| 4 | 84, and Domestic Waste Pump Station 6) | |
| 5 | Expert Disclosure | TBD |
| 6 | Phase 3 discovery cutoff | TBD |
| 7 | Schedule for Summary Adjudication of Phase 3 Issues | |
| 8 |     File motions | TBD |
| 9 |     File oppositions | TBD |
| 10 |     File replies | TBD |
| 11 |     Hearing | TBD |
| 12 | Jury Trial | TBD |
| 13 | | |
| 14 | Phase 4  (addressing Steadfast and CCI's disputes regarding coverage under the RSL policy) | |
| 15 | Expert Disclosure | TBD |
| 16 | Phase 4 discovery cutoff | TBD |
| 17 | Schedule for Summary Adjudication of Phase 4 Issues | |
| 18 |     File motions | TBD |
| 19 |     File oppositions | TBD |
| 20 |     File replies | TBD |
| 21 |     Hearing | TBD |
| 22 | Jury Trial | TBD |
| 23 | | |
| 24 | Phase 5 (addressing LMI's for interference with contract claim (which is based on the alleged denial | |
| 25 | of coverage afforded to CCI for Building 206/208 under RSL policy); and, if necessary, LMI's and | |
| 26 | CCI's damages and bad faith claims). | |
| 27 | Expert Disclosure | TBD |
| 28 | Phase 5 discovery cutoff | TBD |

| | | |
|---|---|---|
| Schedule for Summary Adjudication of Phase 5 Issues | | |
| | File motions | TBD |
| | File oppositions | TBD |
| | File replies | TBD |
| | Hearing | TBD |
| Jury Trial | | TBD |