UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENNAR MARE ISLAND, LLC, | No. 2:12-CV-02182-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| STEADFAST INSURANCE COMPANY, and Does 1 through 10, | |
| Defendants. | |

STEADFAST INSURANCE COMPANY,

    Counterclaimant,

    v.

LENNAR MARE ISLAND, LLC; CH2M HILL CONSTRUCTORS, INC., and DOES 1 through 10,

    Counterdefendants.

CH2M HILL CONSTRUCTORS, INC.,

    Counterclaimant,

    v.

STEADFAST INSURANCE COMPANY,

    Counterdefendant.

1

The motion for partial summary judgment filed by Lennar Mare Island, LLC ("LMI") on October 25, 2013, is currently pending before the court. At issue in this motion is the alleged refusal of defendant Steadfast Insurance Company ("Steadfast") to reimburse LMI for costs relating to polychlorinated biphenyls ("PCB") contamination in Building 116 on Mare Island Naval Shipyard.

Steadfast filed its opposition on November 22, 2013, and LMI filed its reply on December 13, 2013.[1] The court ordered the motion submitted on the pleadings and now DENIES the motion.

I. BACKGROUND

On June 22, 2012, LMI filed a complaint in Solano County Superior Court against Steadfast, alleging four causes of action: intentional interference with contract; breach of contract; tortious breach of the implied covenant of good faith and fair dealing; and declaratory relief. Complaint, ECF No. 1 at 6-12.

On August 21, 2012, Steadfast removed the case to this court on the basis of this court's diversity jurisdiction. ECF No. 1 at 2.

On August 27, 2012, Steadfast answered and asserted a counterclaim against LMI and CH2M Hill Constructors, Inc. ("CCI").[2] ECF Nos. 4, 5.

On the parties' stipulation, LMI filed a First Amended Complaint ("FAC") on January 17, 2013, containing four causes of action: intentional interference with contract; breach of contract; breach of the implied covenant of good faith and fair dealing; and declaratory relief. ECF No. 22. As relevant to his motion, LMI alleges that it has tendered claims for pollution clean-up expenses to Steadfast under an Environmental Liability Insurance ("ELI") policy but that Steadfast has refused to pay. *Id*. ¶¶ 22-26. Steadfast answered on January 31, 2013. ECF No. 26.

/////

---

[1] The reply exceeds this court's page limits for such documents.

[2] The parties refer to CH2M Hill Constructors as CCI, so the court will as well.

2

1   On September 10, 2013, LMI filed a motion to sever counterclaims between
2   Steadfast and CCI.  ECF No. 41.
3   LMI filed the instant motion for partial summary judgment on October 25, 2013,
4   seeking judgment on its claim that Steadfast breached its contract to pay the environmental
5   clean-up costs stemming from PCB contamination on the floor of Building 116.  MSJ, ECF
6   No. 51.[3]

## II.  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[4]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts").  Moreover, "the requirement is that there be no genuine issue of material fact . . .

---

[3] In addition, as part of the breach of contract claim, the complaint alleges Steadfast has refused to pay for clean-up costs in Buildings 206/208, 84, 386, 971 and 688 Pits.  ECF No. 22 ¶ 23.

[4] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

3

1  Only disputes over facts that might affect the outcome of the suit under the governing law will
2  properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in
3  original).
4  In deciding a motion for summary judgment, the court draws all inferences and
5  views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at
6  587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a
7  whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine
8  issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*
9  *Co.*, 391 U.S. 253, 289 (1968)).
10  A court may consider evidence as long as it is "admissible at trial." *Fraser v.*
11  *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the
12  evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001)
13  (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the
14  burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.
15  2002). If the opposing party objects to the proposed evidence, the party seeking admission must
16  direct the district court to "authenticating documents, deposition testimony bearing on attribution,
17  hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in
18  question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86
19  (9th Cir. 2010). However, a court may be "more lenient" with the affidavits and documents of
20  the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir.
21  1979).

III.  EVIDENTIARY ISSUES

23  Steadfast challenges a number of LMI's exhibits. As the court does not rely on
24  many of them, it need not resolve most of the objections. It does rule on the objections discussed
25  below.

26  1. Exhibit 7

27  Steadfast challenges Exhibit 7, which is a "Settlement Agreement and Mutual
28  Release" among LMI, CCI and Steadfast concerning PCB clean-up on Mare Island, saying it is

1  not properly authenticated and relies on hearsay.  ECF No. 74 at 9 ¶ 17.  It also claims the
2  document should be stricken because it is confidential and LMI did not follow this court's
3  requirements for submitting a document that another party believes should be sealed.  *Id*.
4  Thomas Sheaff, Vice President of LMI Homes of California, Inc., a managing
5  member of LMI, describes Exhibit 7 as a resolution of a dispute between LMI and Steadfast about
6  whether LMI had satisfied its deductible for clean-up costs under the ELI policy.  MSJ,
7  Declaration of Thomas Sheaff (Sheaff Decl.) ¶ 14.  The document states, among other things, that
8  the agreement "is not and shall not be construed as or deemed to be evidence of, an admission of
9  any kind on the part of any of the Parties now or with respect to any future claim or dispute."
10  MSJ, Ex. 7 at LMI-118523.
11  Under Rule 408 of the Federal Rules of Evidence, a settlement is not admissible
12  "either to prove or disprove the validity or amount of a disputed claim."  Moreover, in this case
13  the agreement itself provides that it is not to be construed as an admission with respect to any
14  future claim or dispute.  Ex. 7 at LMI-118523.  The court will not consider it.  *See Troutman v.*
15  *Unum Life Ins. Co*., No. C-04-0889 MMC, 2008 WL 2757082, at *7 (N.D. Cal. Jul. 14, 2008)
16  (refusing to consider a settlement agreement containing similar language, under both Rule 408
17  and the terms of the agreement).
18  The objection to Exhibit 7 is sustained.
19  2.  Exhibit 8
20  Exhibit 8 is a letter from CCI dated March 27, 2009 and addressed to Neal Siler,
21  Environmental Manager of LMI Mare Island, LLC, again discussing the PCB site, Building 116
22  UL #01, and supported by a lengthy attachment entitled "Description of Confirmed Unknown
23  Condition No. 152."  Steadfast again objects on the basis of authentication and hearsay.  However
24  in its own Statement of Facts in Opposition to Summary Judgment, Steadfast relies on LMI's
25  Exhibit 8.  *See, e.g.*, ECF No. 73 ¶ 11.  This objection is not well taken.
26  /////
27  /////
28  /////

5

IV. UNDISPUTED FACTS[5]

From the 1850s to 1996, the United States Navy operated a shipyard on Mare Island in Vallejo. FAC ¶ 4. The base was closed as part of the "Base Realignment and Closure" program and title to 650 acres, the Eastern Early Transfer Parcel ("EETP"), was conveyed to the City of Vallejo in March 2002. *Id*. ¶ 5. Before the base closed, the Navy took 90 samples from stains on the floor of building 116 and undertook some clean-up in the building. MSJ, Ex. 8 at SJCE 023715-023716.

As part of the transfer, Vallejo agreed to undertake environmental remediation of the parcel and the Navy agreed to pay for the clean-up. FAC ¶ 6. Vallejo then transferred title to LMI, which agreed to take on the environmental remediation of the parcel. *Id*. In turn LMI entered into a contract with CCI, which required CCI to remediate pollution conditions. *Id*. ¶ 7.

Steadfast issued a Remediation Stop Loss policy number ERC 522484-00 ("RSL Policy") to CCI and the Environmental Liability Insurance policy, number REL 5224850-00 ("ELI Policy"), to LMI. Steadfast's Response to LMI's Statement of Undisputed Facts, ECF No. 74 ¶¶ 1, 3. The provision of the ELI Policy at issue in this case provides in pertinent part:

> [Under Coverage A1 Steadfast promises to] pay to the **First Named Insured** any **Cleanup Costs** in excess of the applicable **Self Insured Retention** required by **Governmental Authority** as a result of a **Pollution Event** on, at or under a **Covered Location** that is not a **Known Pollution Condition** and that is first discovered by an **Insured** during the **Policy Period** . . . provided that . . . the **Claim** is reported to the **Company** during the **Policy Period** . . . .

ECF No. 74 at 4 ¶ 8; MSJ, Ex. 1 at SJCE 167596 (emphasis in original).[6] LMI is the First Named Insured in the ELI Policy for Coverage A1. ECF No. 74 at 4 ¶ 9; MSJ, Ex. 1 at SJCE 167554. The terms in bold are defined in the policy. Although LMI says all the requirements for payment

---

[5] Lennar relies on a number of facts alleged in its complaint without offering supporting evidence. As these are background to the current litigation and as Steadfast does not object, the court incorporates them to provide context to the issues presented by the instant motion. By setting out facts from Lennar's complaint, the court makes no findings.

[6] Coverage B covers third party liability other than clean up costs and Coverage C is professional liability coverage. Neither is at issue in this case.

6

1  have been satisfied and Steadfast contends there are disputed factual issues as to all of them

2  except that Building 116 is a covered location, only a few of the terms are essential to the

3  resolution of this motion.

4      The ELI Policy defines "Known Pollution Conditions," as relevant here, as

> all conditions specifically described in the Scope of Work Endorsement to the Remediation Stop Loss Policy . . . and which require or may ultimately require any form of remedial investigation or action . . . . **Known Pollution Conditions** are: [¶] 1. those conditions specifically set forth in Tables 1-3 and Figures 1 through 89 and Fuel Oil Line Removal Project Figures 1 through 11 to the Scope of Work Endorsement, which statement of conditions is either (i) a designation of location, contamination, byproducts, breakdown products and source of such identified contamination at the time of policy inception, or (ii) a designation of location, contamination, byproducts, breakdown products and an expressly unidentified source of such identified contamination at the time of policy inception . . . .  In the case of any **Known Pollution Condition**, the **Known Pollution Condition** shall be deemed to include the entire quantity and geographic extent of any contaminant which is ultimately determined to have been released as or to have constituted part of such **Known Pollution Condition**, without regard to: . . . [¶] 2. whether the contaminant . . . is subsequently determined to have migrated across or through one or more environmental media before or after identification as a **Known Pollution Condition** or to have otherwise had a fate and transport or spatial extent different than that understood as set forth in Tables 1-3 and Figures 1 through 89 and Fuel Oil Line Removal Project Figures 1 through 11 or described at the time the contaminant was identified as part of a **Known Pollution Condition** . . . .

MSJ, Ex. 1 at SJCE 167601.

    The Scope of Work Endorsement to the RSL Policy, contained in Endorsement Nos. 2 and 6, provides that

> The conditions and activities identified in Tables 1[7], 2 and 3 and listed below represent the **Scope of Work** of the **Insured Project** and are **Known Pollution Conditions** or actions with respect to such **Known Pollution Conditions** authorized under the **Scope of Work** . . . . Tables 1, 2 and 3 and Figures 1 through 89 and Fuel Oil Line Removal Project Figures 1 through 11 set forth conditions present at the covered location designated in Item 5 of the Declarations.  The figures illustrate the general locations of

---

[7] Although plaintiffs have provided a copy of Table 1, it is in such tiny print as to be unreadable.  MSJ, Ex. 15 at SJCP029103-SJCP029108.

>    contaminants for each site, but do not represent the total extent or maximum concentrations for each contaminant.

MSJ, Ex. 15 at SJCP 029063, 029073.  The definitions section of the RSL Policy says that

>    **Known Pollution Conditions** means all the conditions specifically described in the Scope of Work endorsement and which require or may ultimately require any form of remedial investigation or action . . . .  **Known Pollution Conditions** constitute all of the conditions that are deemed known to the **Insureds** for the purposes of this Policy. . . .

MSJ, Ex. 15 at SJCP 029090.

The endorsement to the RSL policy also says that "[i]f required or authorized by **Governmental Authority**, Lennar has agreed to leave the following building floor slabs in place and intact to serve as an encapsulation remedy for **Known Pollution Conditions** . . . .  [¶]  The buildings included in this category are:  . . . Building 116."  MSJ, Ex. 15 at SJCP 029075.  In addition, on Table 3, denominated "PCB Sites Lennar Mare Island, Vallejo, California Remediation Stop Loss Policy ERC 5224884-00" in segment C2, 04-81, the transformer pad on the northwestern wall and the former drain for the transformer pad in Building 116 are listed.  *Id*. at SJCP 029120.  The wooden floor of Building 116, however, is not listed.  *Id*.

"**Insured**" is defined as "**The Named Insured(s)**," among other things.  MSJ, Ex. 1 at SJCE 167600-167601.[8]  The First Named Insured for Coverage A of the ELI Policy is LMI.  MSJ, Ex. 1 at SJCE 167554.  CCI is listed as an additional insured for Coverage A.1 and A.2.  *Id*. at SJCE 167589.

The policy period is from March 30, 2001 to March 30, 2021.  MSJ, Ex. 1 at SJCE 167554.

LMI contends that in February 2002, it received a letter from Jill Bensen at CCI advising LMI that the floor in Building 116 might be contaminated with PCBs and had been unaware prior to this date of any possible PCB contamination on Building 116's floor.  Sheaff Decl. ¶ 15; *see also* Declaration of Neal Siler (Siler Decl.) ¶ 48 & Ex. 6.

---

[8] Steadfast disputes this, claiming this is only part of the definition.  The court does not find the additional definitions to be material.

The letter from Ms. Bensen noted that additional PCB sites had "been found during a review of additional documentation provided by the Department of the Navy. . . . [¶] The potential unknown PCB sites are located . . . on the interior wooden floor of Building 116 in Investigation Area C2." Siler Decl., Ex. 6 at LMI-118611.

In 2013, Siler, LMI's Division Environmental Manager, received a report from Weston Solutions, an environmental contracting firm, on the results of sample collection and analysis of the wood block, asphalt and concrete portions of the floor of Building 116.  Siler Decl. ¶¶ 1, 7, 8. Siler transposed the results onto sampling grid maps. *Id*. ¶ 8; MSJ, Ex. 11 at LMI 118636-118638.  Although the Navy did not prepare a grid map, in 1995 it had prepared a map showing PCB sites on the floor of Building 116.  MSJ, Ex. 8 at SJCE 023723.

V. ANALYSIS

LMI contends that the ELI Policy provides Steadfast will pay LMI for (1) cleanup costs; (2) in excess of the self insured retention; (3) required by government authority; (4) as the result of a pollution event; (5) at or under a covered location; (6) that is not a known pollution condition; and (7) that is first discovered by an insured during the policy period.  LMI argues it has easily shown the seven elements are satisfied.  Mem. P. & A. at 1.

Steadfast counters there are disputes as to each element and also argues it should be allowed to undertake additional discovery in order to show that LMI or its agents were aware of the PCB sites at Building 116 before the policy period.  Specifically, it argues under Rule 56(d) of the Federal Rules of Civil Procedure the resolution of the motion should be delayed to allow it to conduct discovery on the question whether the PCB contamination was discovered by an insured during the policy period.  ECF No. 72 at 16.  LMI complains about Steadfast's attempt "to delay resolution of the smallest issue with extensive discovery," which "should receive no sympathy from this court, given its refusal to admit undisputed facts . . . ." ECF No. 80 at 18.

Under Rule 56(d), "[i]f a movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: [¶] (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or

/////

take discovery; or (3) issue any other appropriate order." In order to justify a continuance or denial of summary judgment under Rule 56(d), a party must satisfy the following requirements:

> (1) it has set forth in affidavit form the specific facts it hopes to elicit through further discovery; (2) the facts sought exist; and (3) the sought after facts are essential to oppose summary judgment.

*Family Home and Fin. Ctr. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). "'The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment.'" *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir. 2004) (quoting *Chance v. Pac-Tel Teletrac Inc.,* 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)). The party seeking the continuance must also show that it diligently pursued previous opportunities for discovery. *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994); *see also Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980) (motion improperly denied when party had "no previous opportunity to develop evidence . . . crucial to material issues in the case. . . .").[9]

Steadfast has submitted evidence suggesting that CCI was aware of the PCB contamination in Building 116 in 2000, before the policy period: in a document dated April 4, 2000, CCI speculated that the "[w]ood block flooring within building may be contaminated with PCB containing oils . . . In addition, there is a possibility that contamination may be under the building as a result of this wood block flooring." Opposition ("Opp'n"), Ex. 7 at SUA 000248. There is also evidence in the record that the Navy had conducted some tests showing PCB contamination as early as 1995 and further evidence that CCI had access to some of the Navy's documentation of contamination, though at a time not clear from the record. MSJ, Ex. 6 at LMI-118611 (CCI's review of additional documentation from the Navy) & Ex. 8 at SJCE 023723 (Navy's 1995 mapping of PCB contamination in Building 116). In addition, Steadfast has submitted evidence that, in 2000, LMI's former counsel Gordon Hart of the Paul Hastings law firm was LMI's representative in negotiating the terms of the Environmental Services

---

[9] These cases cite to Rule 56(f). The rule was renumbered and rewritten, but without substantive change, effective December 1, 2010.

1  Cooperative Agreement ("ESCA"), which transferred the EETP, and that LMI was involved in
2  negotiations over the terms of the ESCA with the Navy, again in 2000, before the policy period.
3  Opp'n, Exs. 8, 10.

4  Steadfast's counsel Stephen Wong has also filed a declaration averring that in
5  March 2013, he asked the Navy for documents relating to the ELI Policy, but the Navy declined.
6  Declaration of Stephen R. Wong (Wong Decl.) ¶ 11.  In April 2013 he submitted a Freedom of
7  Information Act request for this material, but as yet has not received a response.  *Id*. ¶ 12.  In May
8  his office issued a subpoena to the Paul Hastings firm for documents relating to the transfer of the
9  EETP to Vallejo and to the ELI and RSL policies, but Paul Hastings has not yet produced any
10 documents.  *Id*. ¶ 14.  Finally Wong avers he has filed a motion seeking to lift the presumptive
11 limits for depositions, which is currently pending before the assigned magistrate judge.

12 Whatever the merits of the parties' discovery dispute, which this court will not
13 address, Steadfast has shown it has pursued discovery that might lead to information that LMI,
14 whether through its relationship with CCI or independently, was aware of the PCB contamination
15 on the wood block floor of Building 116 before the policy period, that the information likely
16 exists, and is essential to the opposition to this motion for partial summary judgment.

17 LMI argues that any such information is essentially irrelevant, however, because
18 Steadfast agreed that anything not listed in the Scope of Work Endorsement to the RSL Policy
19 was unknown to the insureds.  Reply at 13.  The RSL Policy does say the listed known pollution
20 conditions "constitute all of the conditions that are deemed known to the **Insureds** for the
21 purposes of <u>this</u> Policy."  MSJ, Ex. 15 at SJCP 029090 (underline added).  However, the ELI
22 Policy, at issue here, does not contain such a limitation.  Moreover, it provides no coverage for
23 Known Pollution Conditions or for conditions "first discovered" outside the policy period.  MSJ,
24 Ex. 1 at SJCE 167596 (Coverage A: Cleanup Costs).  LMI's reading — that anything not listed as
25 a known condition in the RSL Policy necessarily was discovered during the policy period —
26 would collapse the two provisions of the ELI policy into one.  However, in construing insurance
27 policies this court "'must avoid interpretations that would create redundancy in policy language.'"
28 *Great W. Drywall, Inc. v. Interstate Fire & Cas. Co.*, 161 Cal. App. 4th 1033, 1042 (2008)

(quoting *Carmel Dev. Co. v. RLI Ins. Co*., 126 Cal. App. 4th 502, 511 (2005)); *see also Doble v. Mega Life & Health Ins. Co*., No. C 09-1611 CRB, 2010 WL 3702441, at *3 (N.D. Cal. Sep. 15, 2010) (same).

IT IS THEREFORE ORDERED that LMI's motion for partial summary judgment, ECF No. 51, is denied without prejudice to renewal following a reasonable period of time for Steadfast's conduct of the discovery identified in opposition to the motion.

Dated: February 27, 2014.

_____
UNITED STATES DISTRICT JUDGE