UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENNAR MARE ISLAND, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STEADFAST INSURANCE COMPANY, et al.,<br><br>Defendants. | No. 2:12-cv-2182 KJM KJN<br><br><br><br>ORDER |

Presently pending before the court are two motions to compel, one filed by plaintiff/counter-defendant Lennar Mare Island, LLC ("LMI") and the other filed by defendant/counterclaimant Steadfast Insurance Company ("Steadfast"). (ECF Nos. 93, 94.) LMI's motion seeks to compel Steadfast's production of a large number of documents withheld on the claim of a number of privileges, but primarily the attorney-client privilege and work product immunity. Steadfast's motion seeks to compel LMI's production of documents it has withheld on the basis of what LMI terms in its privilege logs as a "joint interest" between it and the Navy and/or the City of Vallejo. The parties filed joint statements and supporting documentation for both motions on March 20, 2014.

A hearing on the motions was conducted on March 27, 2014. (ECF No. 102.) Attorney Ryan L. Werner appeared on behalf of LMI. Attorney Jane K. Baker appeared on behalf of Steadfast. After considering the parties' joint statements, supporting documentation, and the oral

1

argument at the hearing, the court denies LMI's motion to compel without prejudice and partially grants Steadfast's motion to compel.

I.     BACKGROUND

The background facts are taken from the parties' joint statements unless otherwise indicated.[1]  The United States Navy ("Navy") operated a base at Mare Island in the City of Vallejo, California from 1852 to 1996.  (ECF No. 63 at 2 (a prior Joint Statement).)  The Navy's operations at this base resulted in contamination of certain sites located on Mare Island, requiring the Navy to investigate and remediate.  (Id.)  The Navy closed its base on Mare Island in 1996.  (Id.)  In 2002, the Navy conveyed title to the land of its former naval base to the City of Vallejo, and the City then conveyed title to a portion of the base known as the Eastern Early Transfer Parcel ("EETP") to LMI.  (Id.)

In 2001, the Navy and the City of Vallejo ("City") entered into an Environmental Services Cooperative Agreement ("ESCA") in anticipation of these transfers.  (Id.)  Under the terms of the ESCA, the Navy agreed to pay the City $77.67 million, and the City agreed to perform environmental remediation of certain "Known Conditions" at the EETP.  (Id.)  The ESCA defined Known Conditions by reference to tables and figures identifying specific sites and contaminants and defined any condition that was a not a Known Condition as an "Unknown Condition."  (Id.)  The City had no responsibility under the ESCA for certain items referred to as "Navy Retained Conditions."  (Id.)

Also in anticipation of the land transfers, the City and LMI entered into the Mare Island Remediation Agreement ("MIRA").  (Id. at 2-3.)  In the MIRA, LMI agreed to undertake the City's remediation obligations under the ESCA.  (Id. at 3.)

LMI hired CCI to perform remediation construction at Mare Island by entering into the Guaranteed Fixed Price Contract ("GFPC").  (Id.)  The GFPC required CCI to perform "certain environmental services related to the remediation of contamination in the EETP."  (Id.)  Among these services was the "cleanup of specified Known Conditions" for a fixed price of $70.45

---

[1] The parties rely entirely on the factual background stated in a joint statement filed in connection with a previous discovery dispute (ECF No. 63) for both of the present motions to compel.

2

million. (Id.) The GFPC also stated that CCI would be required to cleanup Unknown Conditions under certain circumstances, "for additional compensation, when requested to do so by LMI." (Id.)

In addition, LMI and CCI each signed onto separate insurance policies with Steadfast. The insurance policy between Steadfast and CCI is the "RSL Policy," which provided coverage to CCI in the event that the cost of cleanup of "Known Conditions" exceeded a specified threshold of $57.5 million. (Id. at 3-4.) The insurance policy between Steadfast and LMI is the "ELI Policy," which "provides coverage to LMI for the cost of remediating pollution conditions that are not Known Pollution Conditions . . . as well as coverage for a list of special conditions described in an endorsement." (Id. at 3.)

The action brought by LMI against Steadfast involves seven sites in the EETP. (Id. at 5.) Each of the seven sites was the subject of a separate insurance claim by LMI under the ELI Policy. (Id.) Each of the claims surrounding each of the seven sites involve their own distinct facts. (Id.) However, without going into the factual details surrounding the parties' dispute with respect to each site, LMI generally alleges that Steadfast committed: (1) intentional interference with contract (i.e., LMI's contract with CCI); (2) breach of contract (between LMI and Steadfast); (3) tortious breach of the implied covenant of good faith and fair dealing; and (4) that LMI is entitled to declaratory relief. (Def.'s Notice of Removal, ECF No. 1, Ex. A at 1-6.)

Steadfast joined CCI as a cross-defendant, and Steadfast filed a counterclaim for declaratory relief as against LMI and CCI. (Def.'s Countercl. at 4, ECF No. 5.) CCI filed its own counterclaim against Steadfast for: (1) breach of contract; (2) declaratory relief; and (3) tortious breach of the implied covenant of good faith. (CCI's Answer & Countercl., ECF No. 12.)

II.     DISCUSSION

    A.     <u>LMI's Motion to Compel Documents from Steadfast</u>

During the course of discovery thus far, Steadfast has made a number of separate productions of documents to LMI. Along with each production, Steadfast has provided one or more privilege logs to LMI setting forth the documents Steadfast has withheld and the privilege or privileges Steadfast claims entitle it to withhold each listed document. In its motion to compel,

3

LMI takes contention with Steadfast's withholding of a large number of the documents Steadfast has identified as privileged in its privilege logs.  In particular, LMI identifies eleven different categories of documents withheld by Steadfast that it argues should be produced because Steadfast's entries for these documents in its privilege logs either do not provide information sufficient to support a privilege claim or claim privileges that appear to be inapplicable on their face.  In addition, LMI requests that the court order Steadfast to pay LMI's attorneys' fees associated with the present motion and as a result of the request letters sent to Steadfast over the course of the past eight months, which LMI contends were never responded to until recently.

As Steadfast states in its portion of the joint statement and as discussed at the hearing, it appears that Steadfast either has already produced or is willing to produce a large number of the documents LMI seeks through its motion to compel.  In addition, Steadfast states in its portion of the joint statement that it has fixed many of the errors in its privilege logs that are highlighted by LMI and has provided both the court and LMI with amended versions of the portions of its logs that initially contained those errors.  Furthermore, Steadfast's counsel informed the court during the hearing that it is working on providing LMI with an updated and comprehensive privilege log that identifies the documents it has already produced and corrects the errors present in its previous logs.

Given the above circumstances and the large number of documents at issue in this dispute, the court finds it appropriate to order the parties to continue to meet and confer regarding the documents at issue in this motion in order to determine which documents have already been or will be produced by Steadfast and to further narrow the list of documents to those that are genuinely in contention.[2]  Furthermore, the court orders Steadfast to produce to LMI within fourteen days of this order both the documents Steadfast states it is willing to provide to LMI in its portion of the joint statement and an amended privilege log that comprehensively lists the documents that Steadfast is still withholding on the basis of a claimed privilege.

---

[2] As stated at the hearing, the court is available to address future discovery issues via an informal teleconference and potentially without the need to file a formal motion to compel.  If desired, the parties need only contact the undersigned's courtroom deputy who will arrange the conference.

Accordingly, the court denies LMI's motion to compel at this time without prejudice to a later renewal after the parties have made the further meet and confer and production efforts outlined above to narrow the list of withheld documents to those that are actually still in dispute between the parties. Similarly, the court also denies LMI's request for attorneys' fees in connection with this motion and its previous correspondence addressed to Steadfast without prejudice.[3]

### III. Steadfast's Motion to Compel Documents from LMI

As part of an earlier discovery request, Steadfast requested that LMI produce "[a]ll documents that include or refer to communications between LMI and the Navy concerning this litigation." (ECF No. 98 at 2.) In its response to this request, LMI objected on the basis "that it has a formal, written joint interest agreement between it and the Navy pursuant to which all of its communications with the Navy concerning this litigation are protected by the attorney-client privilege." (Id.) LMI also identified in its privilege logs 317 documents that it claimed were being withheld or redacted on the basis of a "joint interest"[4] between it and the Navy or the City of Vallejo that entitled it to divulge the information contained in these documents to these third parties without waiving the underlying attorney-client privilege or work product immunity for these documents. Through its motion, Steadfast seeks a court order compelling LMI to produce these documents on the basis that LMI does not have a common interest with the Navy or the City

---

[3] While the court is troubled by the amount of correspondence LMI had to send to Steadfast before Steadfast began to respond to and address the issues highlighted by LMI, the court also appreciates the magnitude of the discovery that has occurred in this case and Steadfast's current efforts and apparent willingness to provide corrections to the errors in its logs and to produce a substantial number of the documents at issue in the present motion. Accordingly, the court will not grant LMI's request for fees at this time. However, the court informs the parties that it will be amenable to considering the costs identified by LMI in the present motion in considering any future requests for fees by LMI in connection with a future motion to compel concerning the documents at issue in the present motion.

[4] While LMI describes the basis for withholding these documents in its privilege logs as a "joint interest," it clarifies in its portion of the joint statement that it is referring to what is more formally known as the "common interest" doctrine when it is using this term. The common interest doctrine is also commonly referred to as the "joint defense" or "joint interest" doctrine. See In re Juniper Networks, Inc. Sec. Litig., 2009 WL 4644534 at *1 (N.D. Cal. Dec. 9, 2009).

of Vallejo sufficient for it to retain the claimed underlying attorney-client privilege or work product immunity for these documents under the common interest doctrine.

### A. Legal Standards

#### 1. The Attorney-Client Privilege

In a diversity case, such as this one,[5] the attorney-client privilege is governed by state law. Fed. R. Civ. P. 501. Under California law, the attorney-client privilege, set forth at California Evidence Code section 954, confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer. . . ." Cal. Evid. Code § 954. A confidential communication between client and lawyer is defined as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Evid. Code § 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 733 (2009) (citations omitted); see also Nat'l Steel Products Co. v. Superior Court, 164 Cal. App. 3d 476, 483 (Ct. App. 1985) ("Although the party asserting the privilege generally has the burden of proof regarding the existence of the privilege . . . the communications sought to be protected are presumed to have been made in confidence." (citations omitted)). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." Id.

---

[5] All claims, counter-claims, and defenses in this action are brought under California law.

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication. Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." Clark v. Superior Court, 196 Cal.App.4th 37, 51 (2011) (citing Costco Wholesale Corp. 47 Cal.4th 725). A party's "voluntary disclos[ure of] privileged documents to third parties will generally destroy the privilege." In re Pac. Pictures Corp., 679 F.3d 1121, 1126-27 (9th Cir. 2012).

## 2. Work Product Doctrine

"Since the attorney work product doctrine involves a procedural consideration and not application of a substantive privilege, federal law applies." California Earthquake Auth. v. Metro. W. Sec., LLC, 285 F.R.D. 585, 589 (E.D. Cal. 2012); Great American Assurance Co. v. Liberty Surplus Ins. Corp., 669 F.Supp.2d 1084, 1090 (N.D. Cal. 2009). Federal Rule of Civil Procedure 26(b)(3) provides, in pertinent part, that:

> (A) Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Thus, "to qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial and (2) they must be prepared by or for another party or by or for that other party's representative." In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management ), 357 F.3d 900, 907 (9th Cir. 2004). "'[A]t the time she prepared the document, the attorney must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable,' and 'the party claiming the privilege must demonstrate that in light of the nature of

7

the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Umpqua Bank v. First Am. Title Ins. Co., 2011 WL 997212 at *4 (E.D. Cal. Mar. 17, 2011) (quoting Equal Rights Ctr. v. Post Properties, Inc., 247 F.R.D. 208, 210 (D.D.C. 2008)). The work product doctrine applies to investigators or agents working for attorneys provided that the documents were created in anticipation of litigation. Id. (citing United States v. Nobles, 422 U.S. 225, 239 (1975)).

### 3. The Common Interest Doctrine

The "common interest" doctrine is recognized under both California and Federal law and is "appropriately characterized . . . as a nonwaiver doctrine." OXY Res. Cal. LLC v. Superior Court, 115 Cal. App.4th 874, 889 (2004); Pecover v. Elec. Arts Inc., 2011 WL 6020412 (N.D. Cal. Dec. 2, 2011). The doctrine "allows disclosure between parties, without waiver of privileges, of communications protected by the attorney-client privilege or attorney work-product doctrine where the disclosure is necessary to accomplish the purpose for which the legal advice was sought." Citizens for Ceres v. Superior Court, 217 Cal. App.4th 889, 914 (2013) (citation omitted). The common interest doctrine "does *not* mean there is 'an expanded attorney-client relationship encompassing all parties and counsel who share a common interest." Id. (citing OXY Res. Cal. LLC, 115 Cal. App.4th at 889) (emphasis in original).

A party seeking to rely on the common interest doctrine "must first establish that the communicated information would otherwise be protected from disclosure by a claim of privilege." OXY Res. Cal. LLC, 115 Cal. App.4th at 890. "The next step in the analysis is to determine whether disclosing the information to a party outside the attorney-client relationship waived any applicable privileges." Id. "If a disclosing party does not have a reasonable expectation that a third party will preserve the confidentiality of the information, then any applicable privileges are waived." Citizens for Ceres, 217 Cal. App.4th 889, 915 (2013).

The common interest exception is construed more narrowly in the context of attorney-client privilege than it is in the context of the attorney work product doctrine." California Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc., 2014 WL 641139 at *8 (E.D. Cal. Feb. 18, 2014). "While many courts have held that to not waive a privilege, such as the attorney-client

privilege, the common interest that parties must share has to have a legal component, this is not the case with the work product doctrine." Pecover, 2011 WL 6020412 at *2.

      For purposes of preserving the attorney-client privilege, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception." In re Pac. Pictures Corp., 679 F.3d 1121, 1129 (9th Cir. 2012). "Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." Id. "Thus, parties may share privileged information when it furthers the attorney-client relationship.  However, sharing destroys the privilege where the parties simply have 'overlapping interests.'" Roush v. Seagate Tech., LLC, 150 Cal. App.4th 210, 224 (2007).  As one court has explained, "'[f]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter.'" OXY Res. Cal. LLC, 115 Cal. App.4th at 891 (citing First Pac. Networks, Inc. v. Atl. Mut. Ins. Co., 163 F.R.D. 574, 581 (N.D. Cal. 1995)).  Furthermore, "[t]he [attorney-client] privilege survives disclosure to a party with a common interest only if it is necessary to accomplish the privilege holder's purpose in seeking legal advice." Citizens for Ceres, 217 Cal. App.4th at 916.

      For work-product immunity to be preserved, "[t]he shared interest may be only financial or commercial in nature," and no waiver will occur so long as there is a reasonable basis for believing that the common interest recipient will keep the disclosed material confidential. California Sportfishing Prot. Alliance, 2014 WL 641139 at *8 (citing Pecover, 2011 WL 6020412 at *2); see also United States v. Deloitte LLP, 610 F.3d 129, 141 (D.C. Cir. 2010).  "Essentially, a court must determine if disclosure is consistent with the work product doctrine's purpose of preserving the adversary system." California Sportfishing Prot. Alliance, 2014 WL 641139 at *8; see also United States v. Am. Tel. and Tel. Co., 642 F.2d 1285, 1299 (D.C.Cir.1980).

////

////

////

B. <u>Discussion</u>

As an initial matter, the court notes that the parties have made only general arguments with respect to the threshold issue of whether the communications and documents at issue are entitled to the underlying claims of attorney-client privilege and work product immunity asserted by LMI. See <u>California Sportfishing Prot. Alliance</u>, 2014 WL 641139 at *7; <u>OXY Res. Cal. LLC</u>, 115 Cal. App.4th at 890. LMI generally argues that these documents are protected by either one or both of these privileges, but does not argue with any specificity that these communications and documents were made in the course of an attorney-client relationship or were prepared by LMI's attorneys in anticipation of litigation. Steadfast argues that the underlying privileges do not apply with respect to a small portion of the communications and documents at issue on the basis that they appear to not involve communications between LMI and its counsel or were authored by third parties. Nevertheless, because the court holds that LMI has not sufficiently shown that it has a common interest with the Navy or the City of Vallejo at least with respect to the communications and documents where the attorney-client privilege is claimed, the court will presume, purely for purposes of addressing the present motion, the presence of the underlying privileges claimed by LMI.

LMI contends that the documents in dispute are entitled to protection under the common interest doctrine because "LMI and the Navy share a legal interest in enforcing Steadfast's obligations under the ELI policy." (ECF No. 98 at 6.) In particular, LMI argues that it and the Navy have a common interest "in obtaining as much coverage under the ELI policy as possible" because the cleanup of any "unknown" condition not paid for by Steadfast under the policy will require the Navy to pay for the condition under the ESCA agreement between LMI and the Navy as a "Navy Retained Condition." LMI further claims that this claimed joint interest "has been expressly recognized in a written common interest agreement among LMI, the Navy, and the City of Vallejo." (ECF No. 98 at 13.) LMI argues that "[c]ommunication with the Navy is important to LMI and its counsel as part of a general exchange of information between parties facing common issues in order to facilitate representation in this and future cases." (ECF No. 98 at 14.)

////

With respect to the documents and communications where the underlying privilege is the attorney-client privilege, LMI's arguments are not well taken.  The "common interest" LMI asserts exists between it and the Navy, in essence, is little more than a shared desire to see the same outcome in the present case, i.e. a judgment in LMI's favor that requires Steadfast to reimburse LMI for the cost of remediating the pollution conditions at the sites at issue in this case.  This interest is insufficient to entitle LMI to protection under the common interest doctrine with respect to the documents with an underlying claim of attorney-client privilege.  See In re Pac. Pictures Corp., 679 F.3d at 1129.  While LMI does claim to have a written agreement between it and the Navy, entitled "Common Interest Agreement Relative to Steadfast Insurance Policies," it provides no evidence as to what that agreement entailed,[6] let alone whether the communications LMI is seeking to protect were made "in pursuit of a joint strategy in accordance with" that agreement.[7]  See id.

Moreover, the relationship between the Navy and LMI in this case is distinguishable from the relationships between the disclosing parties and third party recipients in other cases where courts have found the presence of a common interest for purposes of preserving the attorney-client privilege.  See Seahaus La Jolla Owners Ass'n v. Superior Court, 2014 WL 948494 (Cal. Ct. App. Mar. 12, 2014) (holding that the common interest doctrine preserved the attorney-client privilege when plaintiff homeowners' association disclosed the disputed communications to a group of individual homeowners during an association meeting where a subset of those homeowners had also filed separate lawsuits against the same defendant concerning similar

---

[6] The contents of this agreement have not been provided to either Steadfast or the court.  As stated on the record during the hearing, the court orders LMI to provide Steadfast with a copy of this agreement as a part of the disclosures the court orders below.

[7] According to LMI, the "Common Interest Agreement Relative to Steadfast Insurance Policies" was entered into on May 31, 2014. (Decl. of Thomas Sheaff, ECF No. 100, at ¶3.)  However, a substantial number of the communications LMI is seeking to protect under the common interest doctrine are dated prior to the parties' entry into this agreement.  Accordingly, even if LMI were to have shown that this written agreement were sufficient to entitle it to protection under the common interest doctrine, this agreement would not have covered the prior communications.  Furthermore, LMI does not provide evidence that there was any agreement, written or unwritten, regarding a joint legal strategy prior to this date, let alone explain how the earlier communications and disclosures were made in furtherance of such an agreement.

1  factual and legal issues to those present in the association's case); Hewlett-Packard Co. v. Bausch
2  & Lomb, Inc., 115 F.R.D. 308, 310 (N.D. Cal. 1987) (holding attorney-client communications
3  defendant shared with a third party business that was in the process of acquiring one of
4  defendant's divisions was preserved under the common interest doctrine because there was a
5  common legal interest in anticipated joint litigation that was "quite likely" to arise as a result of
6  the acquisition).  In those cases, a common interest was found between the parties primarily on
7  the basis that their disclosures were made to advance a joint legal strategy concerning either
8  separate litigation involving similar claims and issues or reasonably anticipated joint litigation.
9  Here, however, the Navy has not filed a separate suit against Steadfast concerning the
10 remediation sites at issue, nor is it an insured party under the ELI Policy between LMI and
11 Steadfast that is central to LMI's claims in this case, therefore precluding the possibility of a suit
12 by the Navy against Steadfast presenting similar issues to those that are the subject of this case.
13      Finally, LMI has made no showing that the attorney-client communications at issue were
14 revealed to the Navy in an effort to further LMI's purpose for seeking legal advice.  Depending
15 on the outcome of the present case, the relationship between LMI and the Navy may very well
16 become adversarial in nature if LMI later seeks to obtain payment for its cleanup efforts from the
17 Navy for the conditions Steadfast does not cover under the ELI Policy.
18      Similarly, the common interest doctrine does not apply to the communications disclosed
19 to the City of Vallejo.  LMI argues that it also shares a common interest with the City of Vallejo
20 because the City and LMI both want the environmental contamination at Mare Island cleaned up
21 "sooner rather than later" and "redevelopment to proceed as soon as possible." (ECF No. 98 at
22 15.)  LMI further notes that the City is also a party to the Common Interest Agreement Relative to
23 Steadfast Insurance Policies that LMI entered into with the Navy.  However, the City is not a
24 party to the ELI Policy at issue in this case, is not currently in litigation against Steadfast
25 concerning similar issues to those presented in the current case, and the record does not present
26 any indication of anticipated future joint litigation by LMI and the City against Steadfast
27 concerning similar issues to those presented in this case.  Furthermore, the fact that the City was a
28 party to the common interest agreement is unpersuasive for the same reasons stated above with

respect to the Navy.  Finally, LMI has made no showing that the attorney-client communications at issue were revealed to the City in an effort to further LMI's purpose for seeking legal advice.

LMI is not entitled to a claim of common interest with respect to the disputed communications and documents withheld on the basis of attorney-client privilege.  Therefore, LMI's disclosure of these communications and documents to the Navy and/or the City of Vallejo waived that underlying privilege.  Accordingly, the court grants Steadfast's motion to compel with respect to these communications and documents.

With respect to the documents for which LMI invokes the work product doctrine as the underlying privilege, the question of whether a common interest exists between LMI, the Navy, and the City of Vallejo presents a much closer case.  Because a common interest for purposes of work product immunity "may be only financial or commercial in nature," Pecover, 2011 WL 6020412 at *2, LMI's arguments for it having a common interest with the Navy and the City of Vallejo are more persuasive in this context.  Accordingly, the court finds that LMI and the Navy have a common financial interest in obtaining an outcome resulting in LMI collecting as many of its remediation expenses as possible from Steadfast under the ELI Policy.  Cf. Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc, 2012 WL 3062294 at *7 (N.D. Cal. July 26, 2012) (not reported) (finding that plaintiff trust fund and third party union had a common financial interest in "collecting benefit contributions from participating employers" including defendant).  In addition, the court finds that LMI also has a common financial interest with the City of Vallejo because both parties desire the cleanup of the contamination in the most expedient manner possible so that they may sooner engage in the redevelopment of Mare Island.

Furthermore, there was reasonable basis for LMI to believe that the common interest recipients of the work product documents, i.e. the Navy and the City of Vallejo, would keep those disclosed materials confidential from Steadfast.  See Am. Tel. and Tel. Co., 642 F.2d at 1299 ("[W]ith common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary.").  While LMI has not provided the court with the terms of its written common interest agreement with the Navy and the City of Vallejo, the mere existence of such an agreement is further evidence that disclosure to

13

1  these two non-parties did not waive work product protection.  Pecover, 2011 WL 6020412 at *2

2  ("The fact that Defendant and the NFL have entered into a joint defense agreement is further

3  evidence that Defendant did not waive work product protection."); see also Am. Tel. and Tel. Co.,

4  642 F.2d at 1299-1300 ("When the transfer is to a party with such common interests is conducted

5  under a guarantee of confidentiality, the case against waiver is even stronger."); Blanchard v.

6  EdgeMark Fin. Corp., 192 F.R.D. 233, 237 (N.D. Ill. 2000) (finding that the existence of a

7  confidentially agreement between the disclosing party and the non-party recipient militated

8  against finding a waiver to the extent that the disclosed material was protected by the work

9  product doctrine).

10       Accordingly, the court denies Steadfast's motion insofar as it seeks to compel the

11  disclosure of the documents that LMI is seeking to protect under the doctrine of work product

12  immunity.  However, because the parties have not fully addressed the threshold issue of whether

13  LMI has properly invoked work product protection with respect to these documents, this denial is

14  without prejudice to a renewal of this issue in a future motion to compel with respect to any these

15  documents upon a showing that LMI cannot properly claim the underlying work product

16  immunity or that after LMI has disclosed the common interest agreement between it, the Navy,

17  and the City of Vallejo, the agreement appears to not cover some or all of the documents over

18  which LMI is claiming work product immunity.

19       For the foregoing reasons, LMI shall disclose any and all of the disputed documents where

20  the sole claim of privilege underlying the claim of common interest is the attorney-client

21  privilege.  Furthermore, as stated during the hearing, the court will also order LMI to provide

22  Steadfast with an updated privilege log reflecting only the documents it is withholding on the

23  basis of the common interest doctrine where the underlying privilege is a claim of work product

24  immunity.[8]

---

[8] The court reminds LMI of the court's statements during the hearing regarding the possibility that LMI may be able to re-characterize some of the "joint interest" documents it is withholding solely on the underlying claim of attorney-client privilege to instead claim protection under the work product doctrine.  In developing its revised privilege log, LMI is permitted to re-characterize its entries accordingly so long as it can make a good faith claim that the re-characterized entries are entitled to protection as attorney work product.

### IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED:

1. LMI's motion to compel (ECF No. 93) is DENIED without prejudice to a later renewal after the parties have made the further meet and confer efforts to narrow down the list of disputed withheld documents to those that are actually still in dispute between the parties.

2. Within 14 days of this order, Steadfast shall produce the following to LMI:

    a. The documents Steadfast states it is willing to provide to LMI in its portion of the joint statement.

    b. An amended privilege log that comprehensively lists the documents that Steadfast is still withholding on the basis of a privilege.

3. The parties shall continue to engage in further meet and confer efforts regarding the documents at issue LMI's motion to compel in order to determine which documents identified in that motion have already been or will be produced by Steadfast and to further narrow the list of documents to those that are genuinely in contention.

4. Steadfast's motion to compel (ECF No. 94) is GRANTED in part and DENIED in part without prejudice to a future motion to compel, with respect to any of the documents the court is not ordering LMI to produce, upon a showing by Steadfast that LMI cannot properly claim the underlying work product immunity for the identified documents or that after LMI has disclosed the common interest agreement between it, the Navy, and the City of Vallejo, the agreement does not cover some or all of the documents over which LMI is claiming work product immunity.

5. Within 21 days of this order, LMI shall produce the following to Steadfast:

    a. The documents Steadfast seeks to compel where the sole claim of privilege underlying the claim of common interest is the attorney-client privilege.

    b. An amended privilege log reflecting only the documents LMI is withholding on the basis of the common interest doctrine where the underlying privilege is a claim of work product immunity.

////

////

      c. A copy of the agreement between LMI, the Navy, and the City of Vallejo entitled "Common Interest Agreement Relative to Steadfast Insurance Policies."

IT IS SO ORDERED.

Dated: April 7, 2014

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE