UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENNAR MARE ISLAND, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STEADFAST INSURANCE COMPANY,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | No.  2:12-cv-02182-KJM-KJN<br><br><br><br>ORDER |

Lennar Mare Island, LLC (LMI), CH2M Hill Constructors, Inc. (CCI), and Steadfast Insurance Company dispute their obligations in the clean-up of Mare Island, a former U.S. Navy base. This order addresses Steadfast's motion for leave to amend its counterclaim. The court held a hearing on August 7, 2015. Ryan Werner appeared for LMI; Deborah Ballati and Amanda Hairston appeared for CCI; and Dale Oliver and John Purcell appeared for Steadfast. The motion to amend is GRANTED, as explained below.

I.  BACKGROUND

    A.  Factual Background

The court has summarized the underlying factual history of this case in several previous orders. *See* Order Feb. 28, 2014, at 6–9, ECF No. 95; Order May 15, 2014, at 2–4, ECF

No. 111; Order Apr. 7, 2015, at 2–3, ECF No. 264.  In summary, the claims here stem from LMI's and CCI's environmental clean-up work at the former U.S. Navy base at Mare Island in Vallejo, California.  After closing the base, the Navy conveyed several hundred acres to the City of Vallejo, and Vallejo in turn conveyed a portion of the base to LMI.  LMI agreed to clean up the former base and contracted with CCI, who was tasked with investigating and remediating pollution.

Steadfast issued two insurance policies in connection with this work: (1) the Remediation Stop Loss or RSL Policy, now expired, which provided coverage to CCI should the cost of its cleanup of "Known Pollution Conditions" exceed a specific amount; and (2) the Environmental Liability Insurance or ELI Policy, which provides coverage to LMI for the cost of remediating pollution other than the Known Pollution Conditions.

B.   Procedural Background

LMI filed its original complaint in state court in June 2012.  Notice of Removal, Ex. A, ECF No. 1.  LMI alleged essentially that Steadfast has caused it several million dollars in damages by refusing to pay for claims under the ELI policy or by delaying payments.  First Am. Compl., ECF No. 22.  The complaint describes seven environmental clean-up sites in particular.  *See id.* ¶ 34.  It also seeks declaratory judgment that Steadfast must pay certain submitted claims.  *See id.* ¶¶ 34–35.  Steadfast removed the case to this court in August 2012 and, within a week, filed an answer and counterclaim against LMI and CCI.  ECF No. 5.  Steadfast requested declaratory relief of its "rights and duties under the RSL Policy."  *Id.* at 5.  CCI appeared soon thereafter, asserting claims of its own for damages and declaratory relief.  ECF No. 12.  CCI claims Steadfast withheld payments under the RSL policy.  *Id.*

As the court ordered, the parties filed a joint report in early January 2013 in advance of an initial status conference.  ECF No. 16.  Among other things, Steadfast reported its intent to join the Navy and reserved its right to request leave to amend its counterclaim after learning more about an agreement between LMI, CCI, Vallejo, and the Navy.  The court held an initial status conference a week later, and soon afterwards, LMI filed a first amended complaint.  ECF No. 22.  The court issued a status order, in which Steadfast was allowed ninety days to join

the Navy; the court otherwise barred the joinder of any other parties or amendments to the pleadings absent good cause. ECF No. 25 at 1 (citing Fed. R. Civ. P. 16; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)). The pleadings have remained unchanged since then.

Pretrial litigation and several discovery disputes delayed the issuance of a detailed pretrial scheduling order until May 2014, after a further status conference. In advance of the conference, again the court ordered, the parties submitted a joint status report. ECF No. 110. No party mentioned the possibility of amendments to the pleadings, the joinder of any party, or an expansion of the case. The court held a scheduling conference and issued a comprehensive pretrial scheduling order on May 22, 2014, which essentially adopted the parties' requested schedule. ECF No. 115. Among other deadlines, all discovery would be completed by February 2015, dispositive motions were to be heard in July 2015, and a trial was set for October 2015. *Id.* The court again warned the parties that the pleadings could not be amended absent a showing of good cause. *Id.* at 2 (citing Fed. R. Civ. P. 16(b) and *Johnson*, 975 F.2d 604).

On August 15 and September 22, 2014, after unsuccessful settlement conferences before the assigned magistrate judge, Steadfast served its first set of requests for production of documents on CCI. Joint Rep. 3, ECF No. 150; Hairston Decl. ¶¶ 2–3, ECF No. 175. Although this was Steadfast's first formal request, CCI had previously produced several hundred thousand documents as part of its initial disclosures. *See* Joint Report 4, ECF No. 30. Steadfast appears to have assumed CCI's initial disclosures included documents beyond those normally expected at the initial-disclosure stage. *See* Reply at 9 ("[B]oth CH2M and Steadfast treated CH2M's original Rule 26 productions as tantamount to a very significant production of documents."). CCI's initial disclosures did not include certain documents it had identified through an electronic search, documents CCI appears to have believed were protected by the attorney-client privilege.[1] *See* Hairston Decl. ¶ 7, Skaar Decl. ¶ 6, ECF No. 219. After Steadfast served its formal discovery requests, CCI agreed to produce a privilege log of materials withheld from its initial disclosures.

---

[1] At hearing, CCI clarified it had searched for these documents electronically by using, for example, its attorneys' names and the names of law firms for which those attorneys worked.

3

Hairston Decl. ¶ 8; Skaar Decl. ¶ 6.  CCI began producing documents to Steadfast in October 2014.  Skaar Decl. ¶ 10.

Before Steadfast received responses to its requests or a privilege log, however, the court set a further status conference for late September 2014.  ECF Nos. 144, 146.  In the joint report filed in advance, the parties described the status of the case in detail, but again mentioned no planned amendments.  ECF No. 150.  At the status conference, the court and parties discussed primarily the status of discovery.  Conf. Tr., ECF No. 166.  As for amendments to the pleadings, the following exchange occurred between the court and Steadfast's counsel at the time, Ethan Miller:

> The Court: Let me ask another question.  I think I heard someplace there might be a [series] of other potentially related cases coming in the door.  Is that a possibility?
>
> Mr. Miller: I'm not aware of that, your Honor.
>
> The Court: And no amended—I mean these are the pleadings.  These pleadings are controlling this case.
>
> Mr. Miller: I think that's right.  If something comes up in discovery that changes that, we would obviously have to come to your Honor for leave and show whatever cause we need to show.  But at this point, I don't think we anticipate changing the pleadings.

*Id.* at 6.  The court then ordered the parties to submit a stipulation and proposed modification to the scheduling order to allow for completion of discovery on a slightly later schedule, *id.* at 9–10, which they did.  ECF No. 155.  The court modified the scheduling order to allow completion of discovery in April 2015.  ECF No. 156.

Then in December 2014 and January 2015, respectively, Steadfast moved for leave to file an amended counterclaim, ECF No. 161, and CCI moved to disqualify Hogan Lovells US LLP from representing Steadfast, ECF No. 180.  Steadfast also later filed an offer of proof and a request for permission to file a supplemental declaration in support of its motion.  ECF Nos. 257–258.  The proposed additional filings include deposition testimony transcripts from two witnesses: one who testified she was "taken aback" by documents CCI produced in late 2014 because they "confirmed some of the prior suspicions" of CCI's and LMI's intentional misconduct, Offer of Proof 3, ECF No. 257 (quoting Lubovinsky Dep. 434–35); and another whom LMI questioned

extensively about many more sites than those seven specified originally in LMI's complaint, *id.* at 3–4 (citing Zurkovsky Dep. *passim*).

As discovery went forward, the court held a hearing on the motion to disqualify, which it granted on April 7, 2015. ECF No. 264. After new counsel associated for Steadfast, ECF No. 267, and after receiving another joint report from the parties, ECF No. 268, the court set a new schedule for the balance of the case, ECF No. 271. To avoid prejudice to Steadfast as a result of the disqualification of Hogan Lovells, the modified schedule included deadlines approximately a year later than those entered previously: non-expert discovery was reopened until February 2016, dispositive motions will now be heard by June 2016, trial was set for August 2016, and other deadlines were adjusted.

Turning to Steadfast's motion to amend its counterclaim, the court notes as a preliminary matter that Steadfast does not style that motion as one to modify the scheduling order. Nevertheless, the court construes it in this way, as it may in its discretion. *See Lara v. Sutter Davis Hosp.*, No. 12-2407, 2014 WL 28817, at *1 n.1 (E.D. Cal. Jan. 2, 2014) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992), and *Orozco v. Midland Credit Mgmt. Inc.*, No. 12-02585, 2013 WL 3941318, at *3 (E.D. Cal. July 30, 2013)). Denying the motion as one for leave to amend would not serve the efficient resolution of this case and overlook the de facto nature of Steadfast's motion as one to modify the scheduling order. *See* Mot. Am. at 3 & n.5 (requesting "leave to file its First Amended Counter-Claim pursuant to Federal Rules of Civil Procedure 15(a) and 16(b)" and citing *Johnson*, 975 F.2d at 608–09). In addition, because discovery has progressed since Steadfast's motion was first filed, the court grants its request to consider the supplemental evidence submitted with its proffer. ECF No. 257.

II.     LEGAL STANDARD

Three Federal Rules of Civil Procedure guide the discussion below. First, Rule 16(b) governs amendments to the court's pretrial scheduling order. Second, Rule 26(a)(1) governs initial disclosures. And third, Rule 15 governs amendments to the pleadings.

5

A.     Rule 16

The Ninth Circuit has employed dramatic language to describe "these days of heavy caseloads" in which a "torrent of civil and criminal cases" threatens to "inundate the federal courts." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005); *Johnson*, 975 F.2d at 611. Federal Rule of Civil Procedure 16 is the "central pretrial rule," a rule designed to expedite disposition of cases, discourage "wasteful pretrial activities," improve the quality of trials, and facilitate settlements. *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). A trial court "must issue a scheduling order," which "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(1), (4). This order "control[s] the subsequent course of the action." *Id.* advisory comm. notes to 1983 amendments. If litigants are to take a court's deadlines seriously, they must be enforced, though not mindlessly. *Wong*, 410 F.3d at 1060. A scheduling order may be modified if a party—despite its diligence—cannot reasonably be expected to meet the order's deadlines. *Johnson*, 975 F.2d at 609. The good-cause bar is higher than that governing amendments to the pleadings, *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."), and lower than that which applies to final pretrial orders, *see id.* R. 16(e) ("The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.").

When a party requests changes to the scheduling order, the court's inquiry focuses on that party's diligence. *See, e.g.*, *Johnson*, 975 F.2d at 609. The Ninth Circuit has gone so far as to hold, "[i]f that party was not diligent, the inquiry should end." *Id.* Prejudice to another party may reinforce the court's decision to deny leave to amend. *Id.* On occasion, courts have applied a more detailed three-part test: a movant may establish good cause by showing (1) it diligently assisted with creation of the Rule 16 order, (2) circumstances beyond its control and anticipation prevented compliance with the order, and (3) after it became apparent a new schedule was needed, the party promptly sought relief. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

6

If a party anticipates an amendment to the pleadings, it is obliged to alert the court to the nature of the possible amendment and its probable timing so that the court may structure the schedule of other tasks in the context of the whole litigation. *See id.* Delayed motions presented without satisfactory explanation are regularly denied. *See, e.g., Ash v. Bank of Am. Corp.*, No. 10-02821, 2013 WL 5708597, at *2 (E.D. Cal. Oct. 15, 2013); *Alibaba.com H.K. Ltd. v. P.S. Prods.*, 2012 U.S. Dist. LEXIS 36749, at *5–6 (N.D. Cal. Mar. 19, 2012); *Wells Fargo Bank, N.A. v. Am. Nat'l Ins. Co.*, 2010 U.S. Dist. LEXIS 101310, at *7–8 (C.D. Cal. Sept. 13, 2010); *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996); *see also* 6A Charles A. Wright, et al., Federal Practice & Procedure § 1522.2 (3d ed.) ("Experience shows that many more motions seeking modification of scheduling orders are denied than are granted . . . ."). Motions are more often granted when the opposing party's actions caused delay or when the delay is due to an outside intervening cause. *See, e.g., Orozco*, 2013 WL 3941318, at *3 ("[P]laintiff has pursued discovery diligently. It is defendant's dawdling, not plaintiff's, that caused [the delay]." (citations omitted)); *Hood v. Hartford Life and Acc. Ins. Co.*, 567 F. Supp. 2d 1221, 1225–26 (E.D. Cal. 2008) (granting a motion to modify the scheduling order after a deposition revealed new information and new case law was issued).

Overall, the decision is one of broad discretion. *See Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985).

B.     Rule 26

Rule 26(a)(1) governs initial disclosures and reads in relevant part as follows:

> [A] party must, without awaiting a discovery request, provide to the other parties . . . a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(ii). Although the text of Rule 26 uses the words "may use" to describe its scope, the advisory committee used arguably narrower language, "intends to use":

> The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses.
>
> . . .

7

> A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. . . .

*Id.* advisory comm. note to 2000 amendments; *see also Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 620 (C.D. Cal. 2013) ("[E]ven if a party possesses evidence relevant to its claims or defenses, the party is not required to disclose it under Rule 26 if the party does not intend to use the evidence to support its claims or defenses."). No court appears to have found any meaningful incongruity between the words "may use" and "intends to use." *Cf., e.g., Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 954 (10th Cir. 2004) ("[A] party is not obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." (citation and internal quotation marks omitted)), *abrogated on other grounds*, *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006); *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 33 (S.D.N.Y. 2003) (same); *Gluck v. Ansett Australia Ltd.*, 204 F.R.D. 217, 221 (D.D.C. 2001) (same).

That said, the difference between "may use" and "intends to use" is likely eliminated by the advisory committee's caution that the word "use" should be interpreted broadly:

> "Use" includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if—in the language of Rule 26(a)(3)—"the need arises."
>
> . . . Subdivision (e)(1), which is unchanged, requires supplementation if information later acquired would have been subject to the disclosure requirement. As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use.

Fed. R. Civ. P. 26(a)(1) advisory comm. notes to 2000 amendment; *see, also e.g., Castaic Lake Water Agency v. Whittaker Corp.*, No. 00-12613, 2002 WL 34700741, at *12 (C.D. Cal. Oct. 25, 2002) ("The Notes to Rule 26(a)(1) specifically explain that '[t]he disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and documents the party intends to use if—in the language of Rule 26(a)(3)—the need arises.' Here, Plaintiffs may

8

only have intended to use the [declaration in question] if the need arose. Even so, the Advisory Committee Notes explain that Plaintiffs still were required to disclose the declaration." (footnotes omitted)).

      C.      <u>Rule 15</u>

Federal Rule of Civil Procedure 15(a)(2) governs amendments to the pleadings. It provides, "The court should freely give [leave to amend] when justice so requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "[C]ourts presented with motions for leave to amend a pleading to add an omitted counterclaim generally 'adhere[ ] to the liberal amendment policy of Rule 15' in deciding whether to grant the requested leave." *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1085 (S.D. Cal. 2002) (quoting 6 Charles. A. Wright et al., Federal Practice and Procedure § 1430 at 227 (2d ed. 1990)) (alterations in *SAES Getters*).

"In exercising its discretion [regarding granting or denying leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). However, "the liberality in granting leave to amend is subject to several limitations. Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Unlike Rule 16, the focus of Rule 15 is prejudice. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

III.      <u>DISCUSSION</u>

      A.      <u>Amending the Scheduling Order</u>

Steadfast seeks leave to add nine claims to its counterclaim: accounting, breach of contract, negligence, restitution, unjust enrichment, intentional interference with contractual relations, negligent and intentional misrepresentation, and reformation. Proposed Am. Countercl. ¶¶ 70–110, ECF No. 164-1. In Steadfast's own words, the new relief it seeks "is unquestionably

9

different" from that of its original pleading.  Mem. P.&A. Mot. Am. 11, ECF No. 162. Steadfast's motion comes approximately two years after the court's scheduling orders allowed an amendment without first showing good cause. *See* Order Jan. 29, 2013, at 1; Order May 22, 2014, at 2.  In addition, just a few months before Steadfast filed the motion, in September 2014, the court expressed its understanding that no amendments were anticipated, Status Conf. Sept. 27, 2014, Hr'g Tr. 6:12–18, ECF No. 178-5, and Steadfast agreed. *Id.* at 6:17–18.

        Steadfast acknowledges the delay and agrees that for more than a year LMI and CCI have been producing documents bearing on the proposed amendments.  Mot. Am. at 11.  It argues, however, that the documents CCI has most recently produced establish good cause for an amendment: in October and November 2014, relatively recently in the lifespan of this case, CCI produced what Steadfast considers to be several crucial pieces of evidence. *Id.* at 3.  In its reply brief, Steadfast also explains its view that CCI wrongly withheld several of these documents from its initial disclosures.  *See* Reply 8–9, ECF No. 214 ("If [CCI] believed that the documents should have been produced under its [initial disclosure] obligations (otherwise why segregate and withhold them as privileged?), why did it not produce them until October 2014?").  CCI agrees it produced the documents in question in October 2014, but argues the delay was not its doing, because Steadfast only made its first formal request for documents in August 2014.  CCI Opp'n at 7.

        If CCI did withhold documents it was obligated to produce, good cause may exist for an amendment. *See Jackson*, 186 F.R.D. at 608 (schedule modifications may be in order if unforeseen circumstances beyond a litigant's control made compliance impossible).  When this case began, CCI was obligated to give Steadfast a copy or description of any document CCI would "use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1).  As noted above, the words "may use" limit this rule to information CCI anticipated using to support its position, with "use" understood broadly, be it at a pretrial conference, with a motion, in discovery, or at trial.  *See, e.g.*, *Reinsdorf*, 296 F.R.D. at 619; *Castaic Lake*, 2002 WL 34700741, at *12.

At hearing, CCI explained it had not intended to use the documents in question, so it was not required to disclose them until Steadfast requested. In fact, CCI explained, it intended to use only documents already in Steadfast's possession, but had disclosed many thousands more voluntarily. According to CCI's explanation at hearing, its decision was one of convenience; it had already produced the same documents to LMI on a hard drive. But as noted above, CCI "withheld" certain documents from this production, identified by "electronic search terms." Hairston Decl. ¶ 8. CCI's counsel's declaration implies these documents were withheld because they were privileged. *See id.* ("After Steadfast served its first set of requests for documents on August 15, 2014, I immediately agreed to produce a privilege log for documents that were responsive to the requests but had been specifically identified and withheld from CCI's initial document production through the use of electronic search terms."); *see also* Skaar Decl. ¶ 6 ("Ms. Hairston [CCI's counsel,] agreed to review, and either produce or log, the documents that CH2M had withheld from its initial disclosures on the basis of attorney-client privilege, but which were responsive to Steadfast's document requests."). It is undisputed that although CCI withheld documents from its initial disclosures on the basis of privilege, it did not forward a privilege log. *See* Hairston Decl. ¶ 8; Skaar Decl. ¶ 3.

Steadfast faults CCI for withholding privileged documents without forwarding a privilege log. Rule 26 requires production of a privilege log "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material." Fed. R. Civ. P. 26(b)(5)(A). Although the rule does not carve out initial disclosures, the few courts to address the question have concluded a party is not required to produce a privilege log with initial disclosures. *See, e.g., Rand v. Town of Exeter, N.H.*, No. 11-55, 2014 WL 4922977, at *7 (D.N.H. Sept. 30, 2014); *Sommer v. United States*, No. 09-2093, 2011 WL 4592788, at *10 (S.D. Cal. Oct. 3, 2011). The Ninth Circuit appears not to have weighed in. Their reasoning is that Rule 26(b)(5) applies to information that is "discoverable"; because Rule 26(a)(1)(A) requires production of only those documents a party intends to use, if a party intends not to use a privileged document, it is not "discoverable" at the initial-disclosure stage, and no privilege log is necessary. *See, e.g., Sommer*, 2011 WL 4592788,

at *10. Even if this reading of Rule 26 is correct, in the situation where a party intends to use a document but withholds it from initial disclosures because it was privileged, Rule 26(b)(5) appears to require a privilege log. *See Aecon Bldgs., Inc. v. Zurich N. Am.*, 253 F.R.D. 655, 660 (W.D. Wash. 2008); *see also Rand*, 2014 WL 4922977, at *7 (noting privilege logs are often appended to initial disclosures whether or not required). In this court's view, providing a privilege log with initial disclosures would be consistent with the purpose animating the initial disclosure requirement. *See* 8A Charles A. Wright, et al., Federal Practice & Procedure § 2053 (3d ed.) (noting one purpose of initial disclosures is to avoid "the cost of adversarial antics in discovery" (citing Fed. R. Civ. P. 26(a) advisory comm. notes to 1993 amendments)).

In sum, CCI produced a hard drive of documents with its initial disclosures but avers it did not intend to rely on any of those documents. It withheld a substantial number of materials from these initial disclosures because targeted electronic searches suggested they were privileged or protected by the work-product doctrine. Nevertheless, CCI provided no privilege log. When Steadfast much later received additional documents and a privilege log, it believed they were a sufficient basis for nine new counter-claims, including for negligent and intentional misrepresentation.

The court does not condone CCI's production strategy, but it also questions Steadfast's early-case practice. Though Steadfast long suspected foul play, it did not alert the court to the possibility of an amendment until the instant motion. And as comprehensive as CCI's initial disclosures may have appeared, Steadfast should not have assumed its opponent would produce all relevant documents in an initial disclosure; the absence of a privilege log should have been a red flag. Given the case law finding that Rule 26(a)(1) requires production of only those documents a litigant intends to use, regardless of their relevance, Steadfast should have been more diligent.

On balance, however, denial of Steadfast's motion would not satisfy the court's duty to ensure fundamental fairness in the litigation before it. Rule 16's purpose, essentially, "is to get cases decided on the merits of issues that are truly meritorious and in dispute," *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1227, and "to manage the cases . . . efficiently and effectively,"

not to enforce deadlines "mindlessly" or for no good reason, *Wong*, 410 F.3d at 1060. In the particular circumstances here, where the court's disqualification of Steadfast's previous counsel has independently reset every deadline, the motion is granted. *Cf.* Fed. R. Civ. P. 16(b), advisory comm. notes to 1983 amendments ("[C]hanges in the court's calendar sometimes will oblige the judge . . . to modify the scheduling order.").

        B.        <u>Amending the Counterclaim</u>

Having determined to modify the scheduling order to consider Steadfast's motion to amend, the court now turns to its merits. *See, e.g., Phoenix Sol'ns, Inc. v. Sony Electronics, Inc.*, 637 F. Supp. 2d 683, 692 (N.D. Cal. 2009) (permission to amend separate from the merits of proposed amendment). As noted above, Rule 15 governs amendments to the pleadings, and the focus of that Rule is avoiding prejudice. *Eminence Capital*, 316 F.3d at 1052. A motion to amend may also be denied if amendment would be futile, was sought in bad faith, or would cause undue delay. *Cafasso*, 637 F.3d at 1058. For the reasons below, the court grants leave to amend, while putting in place scheduling safeguards to hold Steadfast to representations it made at hearing.

First, although an amendment may cause prejudice by "greatly alter[ing] the nature of the litigation" at a late stage, *Morongo Bank of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), here, the amended scheduling order has allowed discovery to continue until February 29, 2016, the hearing of dispositive motions until June 2016, and set a trial for August 2016. LMI and CCI still have several months to seek discovery from Steadfast, to challenge the adequacy of its allegations by appropriate motion, and to prepare for trial. *See also DCD Programs, Ltd.*, 833 F.2d at 186 ("[The] liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties."). The hearing schedule imposed below will further limit prejudice.

Second, although LMI and CCI dismiss the evidence Steadfast cites in its motion to amend, they have not shown amendment would be futile as a matter of law. At most they have shown Steadfast's evidence is consistent with both parties' theory of the case. This does not suffice in opposition to a motion to amend the pleadings. *See, e.g., SAES Getters*, 219 F. Supp.

13

2d at 1086 ("While courts will determine the legal sufficiency of a proposed amendment using the same standard as applied on a Rule 12(b)(6) motion, such issues are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend." (citation omitted)).

Third, the court cannot conclude Steadfast seeks amendment in bad faith. A commonly cited example of a bad faith amendment is one meant to destroy diversity jurisdiction. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 804–05 (9th Cir. 1987); *SAES Getters*, 219 F. Supp. 2d at 1095 (referring to "sharp practice"); *HiRel Connectors, Inc. v. United States*, No. 01-11069, 2005 WL 4958488, at *5 (C.D. Cal. July 15, 2005). This case is not an example of such bad faith. Steadfast has explained its decision was motivated by newly discovered documents, and the court declines to discount entirely its former counsel's declaration to that effect. *See* Miller Reply Decl. ¶¶ 6–20, ECF No. 218.

Fourth, although Steadfast's motion has come relatively late in the game, delay alone is normally an insufficient reason to deny leave to amend. *See, e.g., U.S. v. Pend Oreille Public Utility Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991). Discovery is ongoing, and trial is not scheduled until August 29, 2016. *Cf. Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir. 1991) (leave to amend may be denied when the moving party waits until discovery is over, trial is only a few months away, and amendment would add "numerous new claims"); *see also SAES Getters*, 219 F. Supp. 2d at 1086 ("To show undue delay, the opposing party must at least show delay past the point of initiation of discovery; even after that time, courts will permit amendment provided the moving party has a reasonable explanation for the delay." (citations omitted)).

IV.     CONCLUSION

Steadfast's motion to amend is GRANTED. This order resolves ECF Nos. 161 and 257. Steadfast's proposed amended counterclaim, ECF No. 164-1, is deemed FILED. Motions to dismiss the counterclaim shall be filed no later than **Friday, September 4, 2015**, noticing a hearing on the court's civil law and motion calendar on **Friday, September 25, 2015**.

1 | Oppositions shall be filed by **Wednesday, September 16, 2015**. Any replies shall be filed by
2 | **Tuesday, September 22, 2015**.
3 |         IT IS SO ORDERED.
4 | DATED: August 17, 2015.

                                            UNITED STATES DISTRICT JUDGE