1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LENNAR MARE ISLAND, LLC,                   No.  2:16-cv-00291-KJM-KJN

12              Plaintiff,

13        v.

14   STEADFAST INSURANCE COMPANY,

15              Defendant.

16
     LENNAR MARE ISLAND, LLC,                   No. 2:12-cv-02182-KJM-KJN
17
                Plaintiff,
18                                              ORDER
          v.
19
     STEADFAST INSURANCE COMPANY,
20
                Defendant.
21

22   AND RELATED COUNTERCLAIMS.

23

24

25          A pair of familiar combatants is before the court in a new case, No. 16-0291

26   captioned above.  Steadfast Insurance Company moves to dismiss three of Lennar Mare Island

27   LLC's (LMI's) claims under Federal Rule of Civil Procedure 12(b)(6).  The court held a hearing

28   /////

                                              1

1   on June 3, 2016.  Ryan Werner and Alan Packer appeared for LMI, and John Purcell appeared for

2   Steadfast.  The motion is denied.

3   I.        ALLEGATIONS AND PROCEDURAL HISTORY

4               Because Steadfast moves to dismiss under Rule 12(b)(6), as a factual matter, the

5   court assumes LMI's complaint accurately depicts the parties' relationship.  *Ashcroft v. Iqbal*, 556

6   U.S. 662, 678 (2009).

7               Several years ago, LMI agreed to take on an environmental remediation project at

8   the Mare Island Naval Shipyard in Vallejo California, which for more than 140 years was a U.S.

9   Navy base.  First Am. Compl. ¶¶ 5–8, ECF No. 9.  Steadfast issued an insurance policy to LMI in

10  2001, the Environmental Liability Insurance policy, or ELI policy.  *Id.* ¶ 10.  The ELI policy was

11  meant to protect LMI against the risks of unknown pollution at Mare Island, which were not

12  covered by other financial and insurance arrangements.  *Id.* ¶ 12.

13              LMI has submitted claims under the ELI policy, which remains in effect until

14  2021, but Steadfast has not paid.  *Id.* ¶¶ 12, 16.  Rather, Steadfast delayed its responses to LMI's

15  claims, made unreasonable demands for documentation, mischaracterized facts, and conducted no

16  investigations.  *Id.* ¶¶ 16, 19.  Steadfast used its contractual obligations as bargaining chips in

17  settlement negotiations with LMI, which resulted in settlement agreements that Steadfast later

18  violated nonetheless.  *Id.* ¶ 20.  LMI believes Steadfast's position will not change, and it worries

19  that once the ELI policy expires in 2021, delays will have prevented LMI from discovering

20  pollution that would have been covered by the policy, but it will be too late.  *Id.* ¶ 21.

21              In 2012, LMI filed a complaint against Steadfast in California state court, and

22  Steadfast removed the case to this court a few months later.  Not. Removal Ex. A, *Lennar Mare*

23  *Island, LLC v. Steadfast Ins. Co.*, No. 12-2182 (E.D. Cal. removed Aug. 21, 2012), ECF No. 1.

24  This removed case is the second case captioned above, No. 12-2182.  LMI amended its complaint

25  in January 2013.  No. 12-2182, ECF No. 22.  As in the new 2016 case, LMI alleged in its 2012

26  complaint that Steadfast had refused to pay for claims under the ELI policy or had delayed

27  payments.  *See generally id.*  The 2012 case remains pending before the undersigned; a final

28  pretrial conference and trial are scheduled soon, for August 2016.  No. 12-2182, ECF No. 271.

1    The 2016 case was filed in this court in February of this year, ECF No. 1, and LMI

2    amended its complaint in April, ECF No. 9.  It alleges Steadfast has denied additional claims in

3    violation of its obligations under the ELI policy.  LMI asserts five claims: (1) breach of contract

4    for denying insurance claims under the ELI policy; (2) tortious breach of the covenant of good

5    faith and fair dealing implicit in that policy; (3) breach of contract in connection with three

6    settlement agreements between LMI and Steadfast; (4) declaratory relief of rights under the ELI

7    policy; and (5) declaratory relief of rights under the settlement agreements.  First Am. Compl. at

8    5–18.  It requests damages, prejudgment interest, punitive damages, various declarations of the

9    parties' respective rights under the ELI policy and settlement agreements, attorneys' fees and

10   costs, and other appropriate relief.  *Id.* at 18–19.

11   Although Steadfast denies its liability in total, it moves to dismiss only the claims

12   related to the ELI policy: claims one, two, and four.  Mot. Dismiss, ECF No. 11; Mem. P. & A.,

13   ECF No. 11-1.  Its motion is based on three arguments.  First, it argues LMI's 2016 complaint

14   impermissibly duplicates several of the claims at issue in the 2012 case.  Mem. at 3–7.  Second, it

15   argues several of LMI's allegations fall outside the limitations period established by California

16   law.  *Id.* at 7–8.  And third, it argues LMI's request for punitive damages is unsupported by

17   allegations of maliciousness, oppression, or fraud, as required by California law.  *Id.* at 8–13.

18   LMI has opposed the motion, ECF No. 16, and Steadfast replied, ECF No. 18.

19   Meanwhile, LMI moved to consolidate the 2012 and 2016 cases.  ECF No. 14.  It

20   argues the two cases involve the same policy, the same parties, and the same historical

21   background.  Mem. P. & A. at 1–2.  "The only real distinctions," LMI argues, "are the specific

22   individual claims involved," and the fact that the 2012 case involves a third party, LMI's

23   contractor, CH2M Hill Constructors, Inc.  *Id.*  Steadfast opposes that motion.  ECF No. 15.  It

24   remains pending, and a hearing is set for June 17, 2016.

25   II.    LEGAL STANDARD

26   A party may move to dismiss for "failure to state a claim upon which relief can be

27   granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a

28   "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

1    *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The Ninth

2    Circuit has "settled on a two-step process for evaluating pleadings":

3    
4    
5    
6    
7    
> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

8    
9    
> In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on judicial experience and common sense.

10    *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations and quotation marks omitted).

11    III.    DISCUSSION

12            As noted above, Steadfast argues LMI's 2016 claims duplicate its 2012 claims,

13    that its second claim falls outside the limitations period, and that the facts LMI alleges do not

14    show this is a case where punitive damages could be awarded.

15            A.    Claim-Splitting

16            "Plaintiffs generally have no right to maintain two separate actions involving the

17    same subject matter at the same time in the same court and against the same defendant."  *Adams*

18    *v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quotation marks and citation

19    omitted), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).[1]  A district

20    court's discretion to manage its docket allows a number of solutions when a plaintiff appears

21    again with a duplicative complaint.  The court may dismiss the later-filed action with or without

22    prejudice, stay the second case until the first is resolved, enjoin litigation of the second case, or

23    
24    
25    
26    
27    
28    
---
[1] In some cases, a claim may be precluded because it was adjudicated against someone else.  In *Taylor*, the Supreme Court held that absentees are not bound under this rule except in a limited set of circumstances.  *See* 553 U.S. at 893–904.  It rejected the doctrine commonly known as "virtual representation," in which "a person may be bound by a judgment if she was adequately represented by a party to the proceeding yielding that judgment."  *Id.* at 896, 898.  Because the *Adams* court relied on this virtual-representation rule, 487 F.3d at 691–92, its opinion is no longer good law in that respect.  *See Patten v. Clark*, 623 F. App'x 889, 890 (9th Cir. 2015).  Otherwise the *Adams* court's discussion of impermissible claim-splitting remains precedential.  *See, e.g.*, *In re Consol. Salmon Cases*, 688 F. Supp. 2d 1001, 1007–11 (E.D. Cal. 2010).

1   consolidate the two.  *Id.*  Steadfast requests dismissal.  LMI disagrees that its 2016 claims

2   duplicate its 2012 claims and opposes the motion, although it does move separately to consolidate

3   the 2012 and 2016 cases.  Neither party addresses the possibility of a stay or an injunction.

4          "To ascertain whether successive causes of action are the same," the court applies

5   "the transaction test, developed in the context of claim preclusion."  *Id.* at 689.  "Whether two

6   events are part of the same transaction or series depends on whether they are related to the same

7   set of facts and whether they could conveniently be tried together."  *Id.* (citation and quotation

8   marks omitted).  Four criteria are relevant:

9
> (1) whether rights or interests established in the prior judgment
10
> would be destroyed or impaired by prosecution of the second
> action; (2) whether substantially the same evidence is presented in
> the two actions; (3) whether the two suits involve infringement of
11
> the same right; and (4) whether the two suits arise out of the same
> transactional nucleus of facts.
12

13   *Id.* (citation and quotation marks omitted).  "The last of these criteria is the most important."  *Id.*

14   (citation and quotation marks omitted).

15          In *Adams*, the plaintiff moved to amend her complaint to add four claims and

16   several defendants, but the district court denied her motion because it was filed long after the

17   deadline for amendments and included no explanation for the delay.  *Id.* at 687.  The case was

18   then tried to a jury, which returned a verdict for the defendants.  *Id.*  The Ninth Circuit affirmed

19   the district court's decision not to allow an amendment and affirmed the judgment.  *Id.*

20   Meanwhile, after the district court denied her motion for leave to amend, the plaintiff had filed a

21   new complaint that included the very same claims she had sought to allege by amendment in the

22   previous case.  *Id.* at 687–88.  The district court dismissed this second complaint with prejudice.

23   *Id.*  The circuit court affirmed that order as well.  *Id.* at 694.

24          Here, by contrast, it does not appear LMI has attempted to circumvent this court's

25   orders in the 2012 case, but it may fairly be said that LMI's 2012 and 2016 cases "arise out of the

26   same transactional nucleus of facts," "the most important" criterion of the transaction test.  *Id.*

27   at 689.  The two cases involve the same parties in the same positions, the same insurance

28   contract, the same physical location, and the same or very similar questions of law.  Only two

1    features distinguish the 2012 case from the 2016 case: the individual insurance claims in question

2    and CCI's absence as a counter-defendant and counter-claimant in the 2016 case.

3              In this respect, the two cases here resemble the two cases before the Eleventh

4    Circuit in *Trustmark Insurance Co. v. ESLU, Inc.*, 299 F.3d 1265 (2002).  In *Trustmark*, the

5    defendant had agreed to underwrite insurance policies for the plaintiff.  *Id.* at 1266.  The plaintiff

6    later discovered the defendant had miscalculated deductibles, and sued.  *Id.*  Midway through the

7    litigation, after the deadline for amendments had passed, the plaintiff discovered several more

8    miscalculations and moved to amend its complaint.  *Id.* at 1266–67.  The district court denied the

9    motion and the case went to trial.  *Id.* at 1267.  The jury returned a verdict for the defendant.  *Id.*

10   The frustrated plaintiff filed a new lawsuit against the same defendant based on the allegations it

11   had not been allowed to include in an amended complaint.  *Id.*  The district court dismissed the

12   action under Rule 12(b)(6), and the circuit court affirmed.  *Id.* at 1267, 1272.  On appeal, the

13   plaintiff argued the second case was not barred because it was based on a new series of contract

14   breaches.  *Id.* at 1270.  The Eleventh Circuit was unpersuaded: "The similarities between the two

15   lawsuits are clear.  Both involve breaches of the same contract, committed by the same party and

16   involving the same general type of conduct."  *Id.*  The same may be said of LMI's two lawsuits.

17   "A series of breaches of the same contract, all occurring before filing suit, should be brought in

18   that suit."  *Id.*

19             Notably the Eleventh Circuit's decision in *Trustmark* refers to contract breaches

20   "all occurring before filing suit."  *Id.*  When it comes to successive allegations, timing often plays

21   a decisive role.  A disappointed plaintiff may not relitigate the events underlying a previous

22   judgment, but preclusion rules do not bar the "litigation of events arising after the filing of the

23   complaint that formed the basis of the first lawsuit."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139

24   (2d Cir. 2000); *accord Adams*, 487 F.3d at 693 ("While we might have found [dismissal was] an

25   abuse of discretion had the claims in [the plaintiff's] second suit been based on events occurring

26   subsequent to the filing of her complaint in the first action, that is not the case here."); *Prime*

27   *Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990) (collecting authority for the

28   /////

1     proposition that claim preclusion does not "bar a subsequent suit for any breach that had not

2     occurred when the first suit was brought.").

3             Timing would also have affected any decision by LMI to instead seek leave to

4     amend its pleading in the 2012 case; the deadline for amendments in that case has long passed.

5     *See, e.g.*, Order Aug. 17, 2015, No. 12-2182, ECF No. 290; *but cf.* Fed. R. Civ. P. 15(b)

6     (amendments during and after trial).  Alternatively, as LMI's counsel intimated at hearing, if

7     LMI's 2016 claims arose only after its 2012 case began, it could have sought leave to file a

8     supplemental complaint in the 2012 case.  *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable

9     notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out

10    any transaction, occurrence, or event that happened after the date of the pleading to be

11    supplemented.").

12            Here, it is unclear when some of LMI's new claims materialized, but many of its

13    allegations concern events after 2013.  *See, e.g.,* First Am. Compl. ¶¶ 33(c), (q).  If LMI believed

14    Steadfast breached the ELI policy again after the 2012 case was underway, a motion to amend its

15    2012 complaint or file a supplemental complaint would not have been out of order.  But if the

16    breaches at issue in LMI's 2016 complaint all occurred before the 2012 case was filed, they

17    should have been asserted in the same case.

18            In summary, LMI's 2016 claims "arise out of the same transactional nucleus of

19    facts" and "involve infringement of the same right" under the ELI policy, and LMI litigates those

20    claims against the same party who is the defendant in a previously filed case.  But given the

21    uncertainty about which newly alleged breaches occurred after LMI's 2012 complaint was filed,

22    outright dismissal would be the wrong choice here.  Steadfast's motion is denied to that extent.

23            B.      Statute of Limitations

24            If a plaintiff's allegations show its claims are clearly untimely, those claims may

25    be dismissed under Rule 12(b)(6).  *See, e.g.*, *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999,

26    1004 (9th Cir. 2014); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969

27    (9th Cir. 2010).  The allegations of LMI's 2016 complaint do not show the second claim is

28    untimely.  As noted, LMI alleges no dates to show when a breach occurred.  It does allege

1    Steadfast made certain misrepresentations several years ago, *see* First Am. Compl. ¶ 33(q)(i), but

2    the complaint asserts breaches of the implied covenant of good faith and fair dealing, not fraud.

3    In this respect also, Steadfast's motion is denied.

4              C.    <u>Punitive Damages</u>

5                    This is an action in diversity.  "Federal district courts sitting in diversity apply the

6    substantive law of the forum state, but apply procedural rules as stated in the Federal Rules of

7    Civil Procedure."  *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1183–84 (E.D. Cal. 2005)

8    (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Substantive California law allows a

9    tort claimant to seek punitive damages, *id.* at 1184, but what a plaintiff must allege to survive a

10   motion to dismiss under Rule 12(b)(6) is a procedural requirement controlled by federal law.  *See*

11   *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010).[2]  Under federal

12   procedural law, as highlighted above, "a complaint must contain sufficient factual matter,

13   accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678

14   (citation and quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads

15   factual content that allows the court to draw the reasonable inference that the defendant is liable

16   for the misconduct alleged."  *Id.*

17                   Under California law, tort damages may be available to an insured plaintiff who

18   proves the defendant insurer breached its implied covenant of good faith and fair dealing.  *See*

19   Cal. Civ. Code § 3294(a); *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43–44 (1999).

20   ───────────────────────

21              [2] District courts in California agree that federal procedural law describes what is necessary
     to state a claim, but disagree about what federal law requires of a request for punitive damages.
     *Compare*, *e.g.*, *Kelly*, 750 F. Supp. 2d at 1146–47 (applying the standard rule of *Iqbal*), *with, e.g.*,
22   *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273–74 (N.D. Cal. 2015) (requiring only a simple
     request for punitive damages).  In previous orders, this court has not adopted a completely
23   consistent position.  *Compare Granger v. Lowe's Home Centers, LLC*, No. 14-1212, 2014 WL
     4976134, at *3–4 (E.D. Cal. Oct. 3, 2014), *with Lexington Ins. Co. v. Energetic Lath & Plaster,*
24   *Inc.*, No. 15-00861, 2015 WL 5436784, at *11 (E.D. Cal. Sept. 15, 2015).

25           When it comes to Rule 12(b)(6), in the absence of binding clarification, the court at this
     point finds the *Kelly* court's position most persuasive.  *See, e.g.*, *MCI Commc'ns Servs., Inc. v.*
26   *Sec. Paving Co., Inc.*, No. 15-1940, 2016 WL 1436521, at *4–5 (E.D. Cal. Apr. 12, 2016); *see*
     *also Iqbal*, 556 U.S. at 678 (a complaint must include sufficient factual matter to make a claim
27   "for relief" at least "plausible on its face").  The court therefore applies the ordinary federal rules
     of pleading to LMI's request for punitive damages.
28

1   Punitive damages are appropriate if the defendant insurer is "guilty of oppression, fraud, or

2   malice." Cal. Civ. Code § 3294(a); *Cates*, 21 Cal. 4th at 43–44. "'Malice' means conduct which

3   is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried

4   on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal.

5   Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel

6   and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). "'Fraud'

7   means an intentional misrepresentation, deceit, or concealment of a material fact known to the

8   defendant with the intention on the part of the defendant of thereby depriving a person of property

9   or legal rights or otherwise causing injury." *Id.* § 3294(c)(3).

10            This case, like many insurance cases, turns on the insurer's alleged "conscious

11   disregard" of its insured's contract rights. The word "conscious" signals that the insurer knew

12   what the likely consequences of its actions would be, and the word "disregard" signals that it

13   chose to ignore those consequences. *See, e.g.*, *Taylor v. Superior Court*, 24 Cal. 3d 890, 895–96

14   (1979). In this vein, an insured plaintiff can support its request for punitive damages by proving

15   the insurer had an established policy or practice of denying insurance claims. *Tomaselli v.*

16   *Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994) (citing *Mock v. Michigan Millers*

17   *Mut. Ins. Co.*, 4 Cal. App. 4th 306, 329 (1992)). For example, a case must go to the jury if the

18   plaintiff presents evidence showing the insurer deliberately and systematically restricted its

19   investigation of the facts so that it could withhold payments. *Amadeo v. Principal Mut. Life Ins.*

20   *Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002) (citing *Hughes v. Blue Cross of N. Cal.*, 215 Cal. App.

21   3d 832, 847–48 (1989)). In short, punitive damages are not available to deter poor judgment and

22   ineptitude, but may be awarded to punish an insurer for its socially unacceptable policies. *Egan*

23   *v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (1979); *Hughes*, 215 Cal. App. 3d at 847.

24            LMI argues the following allegations allow the court to infer Steadfast is guilty of

25   malice and oppression under section 3294(a), *see* Opp'n at 12–13:

26       • "Steadfast has repeatedly engaged in a pattern and practice of wrongfully disputing

27           and withholding benefits due to LMI on these additional claims for which

28           coverage is due under the ELI policy." First Am. Compl. ¶ 19.

- "Steadfast failed and continues to fail to conduct adequate investigation of claims, has disputed and continues to dispute factual matters with no reasonable basis for doing so, and has insisted and continues to insist on interpretations of the ELI policy that have no reasonable basis." *Id.*

- "Steadfast has engaged in this conduct for its own financial benefit, and in order to exert financial pressure on LMI and coerce LMI into accepting lowball settlements of claims in exchange for releases of Steadfast's liability for its bad faith conduct. Then, after execution of settlement agreements, Steadfast has violated its express and implied obligations under those settlement agreements." *Id.* ¶ 20.

- "Steadfast will continue to obfuscate, delay, mischaracterize, and otherwise breach its obligations and cause additional damage to LMI unless relief is afforded . . . ." *Id.* ¶ 21.

- "Steadfast has engaged in its wrongful conduct not only with utter indifference to the financial impact of its conduct on its insured but, on information and belief, in a deliberate attempt to avoid the discovery of further insured claims, to deprive LMI of the protection afforded by the ELI policy, and to use its claims handling strategy as a tool for advancing its own financial interests in preference to those of its insured." *Id.* ¶ 22.

Indeed these allegations allow the court reasonably to infer that Steadfast had an established policy or practice of denying LMI's claims, and that it chose to ignore the clear consequences of its denials.  The motion is denied in this respect as well.

IV.    CONCLUSION

The court orders as follows:

(1) This order shall be filed in both cases captioned above, Nos. 2:16-cv-0291-KJM-KJN and 2:12-cv-02182-KJM-KJN.

(2) Steadfast's motion to dismiss in Case No. 16-0291 is DENIED.  This order resolves ECF No. 11 in that case.

1    (3) The Initial Status Conference in Case No. 16-0291 previously set for June 23,

2    2016 is VACATED and RESET for June 17, 2016, at 10:00 a.m., to coincide with the hearing on

3    LMI's pending motion to consolidate.  A status conference is also SET for June 17, 2016 in Case

4    No. 12-2182, at 10:00 a.m.

5    (4)  By June 13, 2016, the parties in Case No. 16-0291 shall file the joint status

6    report described in this court's previous order in that case, ECF No. 4, and in addition to the

7    topics listed in that order, the parties shall address their respective positions on whether all or a

8    portion of Case No. 16-0291 should be stayed, enjoined, or consolidated with Case No. 12-2182.

9    In addition, by the same date, the parties in both cases shall file a joint report and address their

10   respective positions on whether the scheduling order in Case No. 12-2182 should be modified to

11   allow the filing of an amended or supplemental complaint.

12   (5) The U.S. Navy's request to appear at the status conference, as reset for June 17,

13   2016, is GRANTED.

14   IT IS SO ORDERED.

15    DATED:  June 8, 2016.

16

17   _____

18   UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

11